## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

In re:

ERICA L. GARBATINI,

　　　　　Debtor,

Case No. 18-51587
Chapter 7

## MOTION FOR RELIEF FROM, OR TO VACATE OR VOID, CHAPTER 7 TRUSTEE'S SALE OF LITIGATION CLAIMS BACK TO THE DEBTOR, AND MEMORANDUM IN SUPPORT THEREOF

Movants, Alex Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC (collectively, the "Movants"), by and through their undersigned counsel, hereby submit their motion (the "Motion") seeking relief from or to void the private sale of certain Litigation Claims (as hereinafter defined) by Richard M. Coan, in his capacity as chapter 7 trustee (the "Chapter 7 Trustee") of the bankruptcy estate of Erica L. Garbatini, f/k/a Erica Lafferty and Erica Smegielski (the "Debtor" or "Ms. Lafferty").

## MEMORANDUM OF LAW

### Jurisdiction and Venue

The Court has jurisdiction over the matters at issue in this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Statement of Facts

1.　　　On or about May 23, 2018, Ms. Lafferty, among other plaintiffs, commenced an action in the Connecticut Superior Court, Docket No. FBT-CV18-6075078-S (the "State Court Case"), against Movants, among other defendants, asserting claims including invasion of privacy by false light, defamation and defamation per se, intentional infliction of emotional distress,

**ORAL ARGUMENT REQUESTED**

negligent infliction of emotional distress, civil conspiracy and claims under the Connecticut Unfair Trade Practices Act (collectivley, the "Litigation Claims"). Ms. Lafferty was represented in the State Court Case by the law firm of Koskoff, Koskoff & Bieder, P.C. ("KK&B"). A copy of the Complaint in the State Court Case is attached as **Exhibit 1** and request for judical notice thereof is requested.

2.      In particular, the Complaint asserts that Ms. Lafferty, and the other plainitffs, are, collectively, the immediate family of four children and two educators killed in a mass shooting at Sandy Hook Elementary School, in Newtown, Connecticut on December 14, 2012. In particular, the Complaint asserts that Ms. Lafferty is the daughter of Dawn Hochsprung, the principal of the school who died that day. The Complaint seeks a recovery of substantial monetary damages against the Movants for the exercise of their First Ammendment rights of freedom of speech and freedom of the press in relation to that matter. Needless to say, the Litgation Claims involve high profile and highly charged matters.

3.      On December 5, 2018 (the "Petition Date"), the Debtor filed her voluntary petition for relief under chapter 7, thereby commencing her chapter 7 case (the "Chapter 7 Case"), and also filed her bankutpcy schedules [ECF No. 1].[1] The Debtor was represented by Suzann Beckett, Esq. of UpRight Law LLC. This was the Debtor's second bankruptcy filing, as she had previously filed for chapter 7 on March 1, 2010 as Case No. 10-50469, and received her standard discharge on June 11, 2010.

4.      On the Debtor's Schedule A/B (Property) filed on the Petition Date, in response to question 33 regarding "claims against third parties, whether or not you have filed a lawsuit or made

---

[1] Movants request that the Court take judicial notice of the docket and all filings in the Debtor's Chapter 7 Case.

**ORAL ARGUMENT REQUESTED**

a demand for payment," the Debtor checked "No."  [ECF No. 1, p. 14].  This was a knowingly false statement by the Debtor, and a violation of Debtor's counsel's duties pursuant to section 707(b)(4)(D) of the Bankruptcy Code, which provides that "[t]he signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect."

5.      Likewise, on the Debtor's *Statement of Financial Affairs* (the "SoFA") in response to question 10, which asks "within the last 2 years before you filed for bankruptcy, were you a party to any lawsuit, court action or administrative proceeding" the Debtor also checked "No." [ECF No. 1, 38].  This was also a knowingly false statement by the Debtor, and a violation of the Debtors counsel's duties pursuant to section 707(b)(4)(D) of the Bankruptcy Code.

6.      In light of the high profile nature of the Litigation Claims, which involve a story of worldwide public interest, and indeed the loss of the Debtor's mother, as well as the fact that the Debtor filed for bankrupcy only about seven (7) months after the Complaint was filed, it is inconceivable that the Debtor merely forgot to list such litigation claims as an asset of her bankruptcy case.

7.      The Debtor's bankruptcy schedules did not list the Movants as a potential creditor, even though they could be awarded their attorneys' fees and costs on certain of the Litigation Claims, nor did the Debtor or her bankruptcy counsel include the Movants or their counsel in the mailing matrix as parties in interest in the Chapter 7 Case.  This was also a knowingly false statement by the Debtor, and a violation of the Debtors counsel's duties pursuant to section 707(b)(4)(D) of the Bankruptcy Code.  Indeed, nowhere in any of the Debtor's initial filings on Petition Date did she make any reference whatsoever to the State Court Case in which she is the lead plaintiff.

**ORAL ARGUMENT REQUESTED**

8.      The Debtor's bankrupcy schedules reflect no substantial exempt assets, and the Debtor's Schedule J (Expenes) reveals that the Debtor and her husband have negative monthly net income of -$434.57.

9.      The BNC Certificate of mailing of the Debtor's *Notice of Bankruptcy* [ECF No. 3] likewise reflects no notice of the bankruptcy to the Movants or their counsel.  [ECF No. 7].

10.     According to the Debtor's bankruptcy docket, the Debtor's 341 meeting of creditors was held and concluded on January 2, 2019, and on January 11, 2019, the Chapter 7 Trustee fild a report and notice of assets and a notice to file proofs of claims [ECF No. 9 and 10].  The BNC notice of mailing for the notice of assets and to file claims was also not served on Movants or their counsel [ECF No. 12].

11.     On January 21, 2019, the Debtor filed an amendment (the "Amendment") to her Schedule A/B, and in response to question 33, indicated that she had "Pending Litigation against Alex Jones Attorney:  Koskoff, Koskoff & Bleder CN CV18-6075078" and listed it with an "unknown" value. [ECF No. 13, p. 5].  The Debtor also listed the Litigation Claims as exempt on her Schedule C pursuant to her "wildcard" exemption in section 522(d)(5) of the Bankruptcy Code. Neither this filing, nor indeed at any other time in her Chapter 7 Case to date, has the Debtor ever amended her SoFA, question 10, to reflect the pendency of the State Court Case, thus continuing to leave that document materially inaccurate.  Notwithstanding the Debtor's filing of the Amendment, at no time did the Debtor ever give notice of her bankrupcy to the Movants or their counsel.

12.     Likewise, at no point during the entire two (2) year or more pendency of the Debtor's Chapter 7 Case has the Debtor, or the Debtor's counsel, filed any notice of the Debtor's pending bankruptcy and the automatic stay in the State Court Case pursuant to Connecticut

**ORAL ARGUMENT REQUESTED**

Practice Book § 14-1, and as is common practice and courtesy to not only given the state court judge notice of such matter, but also to indicate that the Chapter 7 Trustee was the real party in interest given that the Litigation Claims were property of the Debtor's bankruptcy estate.

13.     On November 22, 2019, which was fully eleven (11) months after the Detor filed her Amendment, the Chapter 7 Trustee filed an application (the "Retention Application") to employ KK&B as special counsel to the estate pursuant to section 327(e) of the Bankrupcy Code. KK&B's retention application represented as follows:

> Prior to the commencement of the debtor's above-captioned bankruptcy case, Koskoff, Koskoff & Bieder, P.C. entered into a retainer agreement with the debtor. Said agreement provided that said firm is entitled to a one-third contingency fee in addition to the reimbursement of out-of pocket expenses and disbursements. Pursuant to C.G.S. §52-251c, including subsection (c) of said section, a client is permitted to waive certain fee limitations set forth in said statutory provision under certain conditions including but not limited to the substantially complex or unique nature of the medical and/or legal issues in the case, and the likelihood of extensive investigation and discovery proceedings. The debtor herein waived the statutory contingency fee limits in this case, except for the limitation that the fee will not exceed one-third of the recovery, the waiver of which limitation is not permitted under the statutory scheme. Said retainer agreement provided further that Attorney Ron Etemi of Trantolo & Trantolo is a participating counsel and will share in a fee paid to Koskoff, Koskoff & Bieder P.C.

14.     On December 18, 2019, the Court entered an order authorizing the appointment of KK&B as special counsel [ECF No. 25].

15.     Based on the statements in KK&B's Retention Application, the Debtor's filed bankrupcy schedules fail to include two (2) more material matters.  First, KK&B was at least a contingent and unliquidated creditor of the Debtor that should have been listed on her Schedule F (General Unsecured Claims), but was not.  Second, the Debtor's pre-petition contingency fee agreement with KK&B should have been listed on the Debtor's Schedule G (Executory Contracts

**ORAL ARGUMENT REQUESTED**

and Unexpired Leases), but it also was not.

16.     On October 23, 2020, KK&B filed a *Memorandum Concerning the Status of Discovery* in the State Court Action announcing a settlement, in principle, with a defendant in that matter, Midas Resources, Inc.   [State Court Action Docket No. 302.00].   And, at a status conference in the State Court Action on October 27, 2020, KK&B disclosed a settlement in principle with another defendant in that matter, Wolfgang Halbig.

17.     On February 11, 2021, the Chapter 7 Trustee filed a *Proposed Notice of Sale of Property* (the "Sale Notice") [ECF No. 27], which referred to the Litigation Claims, and on February 16, 2021, filed a *Notice* thereof [ECF No. 28].   The Sale Notice provided as follows:

> Notice is hereby given by Richard M. Coan, Trustee in the above case, that he intends to sell property of the above-captioned bankruptcy estate at private sale pursuant to an Agreement between Richard M. Coan, Trustee, as Seller, and the debtor, Erica L. Garbatini, Buyer.  The agreed consideration that Erica L. Garbatini will pay for the property stated below is $37,000.00 plus a possible additional sum, as described below. If there are no objections or higher offers, the contemplated sale is scheduled to take place as soon as possible after the hearing date set forth below. If there are any objections or higher offers, the sale will take place as soon as practicable after the entry of an appropriate order by the United States Bankruptcy Court.
>
> The property to be sold is the following: All of the debtor's causes of action including but not limited to claims for invasion of privacy by false light, defamation and defamation per se, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy and claims under the Connecticut Unfair Trade Practices Act against Alex Jones, et als., as set forth in a civil action styled Erica Lafferty et al. v. Alex Emric Jones et al., pending in the Connecticut Superior Court for the Judicial District of Waterbury and bearing Docket No. UWY-CV18-6046436-S. The debtor has agreed to purchase these causes of action from her bankruptcy estate for $37,000.00. This sum appears to be sufficient to pay all administrative expenses of the bankruptcy case and all allowed claims with interest. In addition, if other creditors file allowed claims prior to the time that the trustee commences his

**ORAL ARGUMENT REQUESTED**

final distribution in this case, the debtor has agreed to pay to the
Trustee, from future recoveries derived from the above-described
civil action, sufficient sums to pay said additional allowed claims
in full together with interest allowed to such additional creditors.

18.     Inexplicably, at no point in time did the Chapter 7 Trustee <u>ever</u> seek to solicit any

offer from the Movants (or their counsel), as the very defendants in the State Court Case, regarding

their interest in purchasing the Litigation Claims from the bankruptcy estate, much less even notify

the Movants or their counsel of the proposed sale itself.  As is obvious and a matter of common

sense, Movants would be very motivated to purchase the Litigation Claims, yet the Chapter 7

Trustee made absolutely no effort to reach out to them or notify them.  Even the most <u>minimal</u> of

good faith efforts to market the Litigation Claims for sale would have entailed at least sending a

letter, email or some notice of the sale to the Movants or their counsel in order to advise them of

the matter, and provide them an opportunity to bid, yet this was not done.

19.     The Debtor's bankruptcy docket reveals that on March 16, 2021, the Court

apparently may have held a hearing on the Chapter 7 Trustee's proposed sale of the Litigation

Claims [ECF No. 30].  The BNC Noticing of this notice of hearing reveals that notice of this

hearing was served on the Debtor's mailing matrix [ECF Nos. 31-34], which again did not include

the Movants or their counsel.

20.     On April 6, 2021, KK&B filed a *Withdrawal of Action Against Particular*

*Defendants* as to Wolfgang Halbig and Midas Resources, Inc., in the State Court Action.  [State

Court Action Docket Nos. 317.00 & 318.00].  This indicates that, at some point prior thereto, the

previously-announced settlements with those defendants were consummated.  The Debtor's

bankruptcy docket to date does not reveal that the Debtor filed a motion or that the Court entered

an order approving the compromise of her claims against those defendants pursuant to Bankruptcy

Rule 9019(a).  "The specific factors which a bankruptcy court considers when making this

**ORAL ARGUMENT REQUESTED**

determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). The Debtor's bankruptcy docket does not reflect that the Court was, at any time, asked to consider these factors.[2]

21.     The Debtor's bankruptcy docket to date does not reveal that the Court has entered any written sale order approving any sale of the Litigation Claims,[3] however, on April 19, 2021, the Chapter 7 Trustee filed a *Report of Sale* [ECF No. 35], which indicated that the sale of the litigation claims was concluded that day through his receipt of $37,000.

22.     In light of the Debtor's bankruptcy schedules, which reported no substantial exempt assets and negative monthly net income, it is highly unlikely that she was the souce of the funds used to purchase the Litigation Claims. In fact, if that $37,000 came from the settlements with Midas Resources or Mr. Halbig, it would mean that Debtor would have used assets of the estate, rather than her own assets, to purchase the Litigation Claims.

23.     Movants had no actual or constructive notice of the Debtor's Chapter 7 Case, the Sale Notice, or of the proposed sale of the Litigation Claims. In fact, the Movants only learned of the Debtor's bankruptcy filing and of the sale of the Litigation Claims because Movants' counsel was conducting PACER litigation searches as background research and stumbled upon the Debtor's bankruptcy filing. See Declaration of Jay M. Wolman, filed herewith. Immediately upon

---

[2] As the compromise of these claims necessarily occurred prior to April 19, 2021, they had not been purchased by Ms. Lafferty and belonged to the Bankrtupcy Estate.
[3] Accordingly, there is no finding of "good faith" and thus no statutory mootness pursuant to section 363(m) of the Bankruptcy Code.

**ORAL ARGUMENT REQUESTED**

discovering these issues, Movants filed this Motion.

24.     The Debtor's bankruptcy docket reveals that no irreconcilable or irreversible actions.  For example, there has been no trustee's final report or account filed or approved, no fee applications of counsel filed or approved, and no distributions to creditors.  Likewise, nothing of any substance has occurred in the State Court Case in the few weeks since the Chapter 7 Trustee filed his Report of Sale that has in any way prejudiced the Litigation Claims.

25.     Had Movants been served with the required notice of the Debtor's Chapter 7 Case and/or the Sale Notice of the Litigation Claims, they would have sought to purchase the Litigation Claims or bid for them at the sale, and indeed for a purchase price <u>well in excess of what they were sold back to the Debtor</u>.  Likewise, Movants today remain fully ready, willing and able to offer well in excess of the $37,000 offer accepted by the Chapter 7 Trustee for the Litigation Claims, and can tender proof of funds at the Court's direction.  <u>See</u> Declaration of Alex E. Jones, filed herewith.

## Legal Analysis

Movants have been potential creditors of the Debtor and thus should have received notice of her Chapter 7 Case pursuant to Bankrutpcy Rule 2002(a), and of the Trustee's Sale Notice of the Litigation Claims pursuant to Bankrupcy Rule 6004(a)(1).  In particular, at the time the petition was filed, certain of the Litigation Claims allowed for an award of attorney's fees and costs to the Movants, as defendants, if the claims are unsuccessful, which rendered Movants as at least contingent, unliquidated creditors of the Debtor's bankruptcy estate.  <u>See</u> Conn. Gen. Stat. § 52-196a; <u>see also</u> Connecticut Practice Book § 18-5(a).

Second, Movants are also parties in interest in the Debtor's Chapter 7 Case given that they are defendants in what Debtor and KK&B would purport to be a multi-million dollar litigation

**ORAL ARGUMENT REQUESTED**

claim that is the single largest potential asset in the Debtor's Chapter 7 Case to a significant degree. The term "parties in interest" encompasses not only entities holding "claims" against debtor, but any entity whose pecuniary interests might be directly and adversely affected by proposed action. See, e.g., W. Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714 (1st Cir. 1994).

Third, Bankruptcy Rule 6004(c) provides that "A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee." (emphasis added). Accordingly, the Movants also should have recived at least the Trustee's Sale Notice pursuant to Bankrutpcy Rule 6004(c) as they are at least "parties in interest" with respect to the property being sold, because they are the very defendants in the Litigation Claims being sold.

The Chapter 7 Trustee's private sale of the Litigation Claims back to the Debtor without the filing of a motion or the entry of a court order does not relieve him of the requirement to comply with the Federal Rules of Bankruptcy Procedure and to provide due process to parties in interest. See In re Burd, 202 B.R. 590, 593-94 (Bankr. N.D. Ohio 1996).

The Chapter 7 Trustee's sale of the Litigation Claims back to the Debtor without providing any notice thereof to the Movants as creditors and/or parties in interest violated procedural due process requirements with respect to the Movants. See Elliott v. General Motors LLC (In re Motors Liquid. Co.), 829 F.3d 135 (2d Cir. 2016).

From a review of the Debtor's bankrupcy docket, it is unclear whether the Court has ever ruled on the validity of the Chapter 7 Trustee's proposed sale of the Litigation Claims back to the

**ORAL ARGUMENT REQUESTED**

Debtor; however, no written order of the Court has been entered approving the sale, and insteaad

the Trustee has only ever filed a Notice of Sale to confirm his receipt of the sale proceeds.

Accordingly, it is unclear what the proper procedural mechanism is to challenge the sale of the

Litigation Claims back to the Debtor, however, analogies can be drawn to the general standards

applicable if the Court has entered a written order, including in particular, a motion to alter or

amend judgment pursuant to Fed. R. Civ. P. 59(e), and a motion for relief from judgment pursuant

to Fed. R. Civ. P. 60, which rules are made applicable to bankruptcy cases by Fed. R. Bankr. P.

9023 and 9024, respectively.

   If a motion for relief is filed within 14 days after the entry of judgment, the court may

construe it as a motion for relief from judgment under Fed. R. Bankr. P. 9023, incorporating Fed.

R. Civ. P. 59(e).  There are generally four (4) grounds upon which such a motion may be granted:

(1) the movant may demonstrate that the motion is necessary to correct manifest errors of law or

fact upon which the judgment is based; (2) the motion may be granted so that the moving party

may present newly discovered or previously unavailable evidence; (3) the motion will be granted

if necessary to prevent manifest injustice; and (4) a motion may be justified by an intervening

change in controlling law.  11 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal

Practice & Procedure: Civil 2D § 2810.1 (1995); 12 James Wm. Moore, et al., Moore's Federal

Practice--Civil § 59.30[5][a][i] (3d ed. 2005).

   Rule 60(b) permits a court to grant relief from a final order on a showing of mistake,

surprise, or excusable neglect, Rule 60(b)(1); newly discovered evidence, Rule 60(b)(2); fraud,

Rule 60(b)(3); a void judgment, Rule 60(b)(4); a satisfied or discharged judgment, Rule 60(b)(5);

or other circumstances justifying relief, Rule 60(b)(6).

   When taken together, Rule 59 and Rule 60 encompass all possible post-judgment relief:

**ORAL ARGUMENT REQUESTED**

Rule 59 incorporates common law principles of equity for granting new trials, 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2D § 2801 (1995), and Rule 60 preserves the relief afforded by ancient remedies for relief from settlement judgments while abolishing the separate and independent use of those remedies. Id. at § 2851. The preemptive effect of these two rules is seen in Rule 60(b)(6), which allows a court to set aside a judgment for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6).

As a consequence, Rules 9023 and 9024, incorporating as they do Rules 59 and 60, incorporate and recognize the need "'to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.'" Kieffer v. Riske (In re Kieffer-Mickes, Inc.), 226 B.R. 204, 209 (B.A.P. 8th Cir. 1998). Due to this broad scope of potential relief, under both rules "a bankruptcy court has wide latitude to reconsider and vacate its own prior decisions . . . ." Bialac v. Harsh Inv. Corp. (In re Bialac), 694 F.2d 625, 627 (9th Cir. 1982).

Lack of notice and service of process leading ultimately to lack of due process properly renders a judgment void within the meaning of Rule 60(b)(4). See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 108 (6th Cir. 1995) (citation omitted). If due process was lacking, "it would be a per se abuse of discretion to deny the movant's motion to vacate." Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle), 307 B.R. 28, 33 (B.A.P. 6th Cir. 2004), aff'd, 412 F.3d 679 (6th Cir. 2005) (citations and internal quotation marks omitted). A court may grant relief under Rule 60(b)(4) by vacating the challenged order or by modifying it to redress the due process issues. Kohut v. United Healthcare Ins. Co. (In re LSC Liquidation, Inc.), 699 F. App'x 503, 508 (6th Cir. 2017).

Receipt of a better offer does not justify the automatic revocation of the underlying sale.

**ORAL ARGUMENT REQUESTED**

In re Stanley Engineering Corp.,164 F.2d 316, 317 (3d Cir. 1947); In re Furst, 57 B.R. 1013, 1015 (E.D. Pa. 1986).  The corollary of this general rule is that a subsequent offer may require that a sale be vacated if the amount of that offer indicates that the sale price was "grossly inadequate." See In re Chung King, 753 F.2d 547, 550 (7th Cir. 1985); In re Snyder, 74 B.R. 872, 878 (Bankr. E.D. Pa. 1987); In re Todem Homes, 51 B.R. 883, 888 (Bankr. S.D.N.Y. 1985); In re F.A. Potts & Co., Inc., 86 B.R. 853 (Bankr. E.D. Pa. 1988).

Sale orders are also vacated when creditors were not sent timely notice of a sale. Wolverton v. Shell Oil Co., 442 F.2d 666 (9th Cir. 1971); In re Insulation & Acoustical Specialties, Inc., 311 F.Supp. 1209, 1213 (W.D. Mo. 1969), aff'd 426 F.2d 1189 (8th Cir. 1970); Mason v. Ashback, 383 F.2d 779, 780 (10th Cir. 1967) (sale "wholly illusory" because no notice given to creditors).

Considerations for a court in approving a proposed sale outside the ordinary course of business including "(i) whether adequate and reasonable notice has been provided to parties in interest, including full disclosure of the sale terms and the debtor's relationship with the purchaser, (ii) whether the sale price is fair and reasonable, and (iii) whether the proposed buyer is proceeding in good faith."  In re Family Christian LLC, 533 B.R. 600, 626 (Bankr. W.D. Mich. 2015).  All of the foregoing fundamental considerations are called into serious doubt in the case at hand.

"[W]hen an unsuccessful bidder attacks a bankruptcy sale on equitable grounds related to the intrinsic structure of the sale, he brings himself within the zone of interests which the Bankruptcy Act seeks to protect and to regulate."  The Wine Group v. Diamante (In re Hat), 310 B.R. 752, 758 (Bankr. E.D. Cal. 2004) (emphasis added) (quoting Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 274 (2d Cir. 1997)); see also In re Canton, No. 05-47803, 2007 Bankr. LEXIS 3352, at *3-4 (Bankr. W.D. Wash. Mar. 21, 2007); Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 388 (2d Cir. 1997) ("an unsuccessful bidder

**ORAL ARGUMENT REQUESTED**

challenging the intrinsic fairness of the sale has standing to appeal an order directing that sale")
(citing <u>Ross v. Kirschenbaum (In re Beck Indus., Inc.)</u>, 605 F.2d 624, 634 n. 13 (2d Cir. 1979)).

Thus, an "unsuccessful bidder is 'aggrieved' if 'the sale was either fraudulent or unfair'
and property was sold for an improperly low price." Kabro Assocs., LLC v. Colony Hill Assocs.
(In re Colony Hill Assocs.), <u>111 F.3d 269, 274 (2d Cir. 1997)</u> (quoting <u>Zaccaro v. Bowery Savs.
Bank (In re Jewel Terrace Corp.)</u>, 10 B.R. 1008, 1012 (Bankr. E.D.N.Y. 1981)).  An unsuccessful
bidder, however, must present "'some evidence of fraud, deceit, mistake of fact or other inequitable
overreaching.'"  <u>In re Colony Hill,</u> 111 F.3d at 274 (quoting <u>In re REA Holding Corp.</u>, 447 F.
Supp. 167, 169 (S.D.N.Y. 1978)).  Ultimately, the issue raised by the party contesting the sale
must implicate whether the highest and best price is going to be obtained for the assets sold, and
thus whether or not the estate and the ultimate distribution to creditors, was short-changed.

In sum, there are compelling equities that prompt a contrary decision to the Chapter 7
Trustee's sale of the Litigation Claims back to the Debtor.  The totality of the circumstances point
to this conduct, when viewed as a whole, as being a deliberate and calculated attempt to shut out
the Movants from the sale process through a complete lack of notice to them and/or their counsel
and in order to facilitate a sale back to the Debtor for substantially less than what the Movants
were willing to pay for those same claims.  In this regard, the whole conduct of the Debtor's
Chapter 7 Case and the Sale Notice is tinged with fraud, error and similar defects that in equity
should affect the validity of the private sale.  Sympathies as a result of the tragic events of
December 14, 2012 do not justify all parties and counsel involved disregarding the Movants' basic
due process rights, proper notice of the bankrupcy and the sale, lack of candor, and applicable
bankruptcy law and procedure, in order facilitate a friendly sale of Litigation Claims back to the
Debtor.

**ORAL ARGUMENT REQUESTED**

Finally, that the Debtor's estate may be a potential "surplus" estate or "full payment" situation of all current claims does not change the analysis, or excuse the misconduct or fraud here. The Chapter 7 Trustee asserts in his Sale Notice that the Debtor's $37,000 purchase price for the Litigation Claims is sufficient to pay all administrative expenses of the bankruptcy case and all allowed claims with interest is incorrect. The Debtor's filed bankruptcy schedules actually report general unsecured claims (excluding the undisclosed debt owed to KK&B) of $53,359.00 [ECF No. 1, p. 8], plus certain undersecured secured claims of another $11,000 [ECF No. 1, p. 18], and thus leaving a total of at least $63,000 in unpaid claims according to the Debtor's own filed bankruptcy schedules. The Debtors' Claims Register, however, reveals eleven (11) proofs of claim filed totalling only $30,405.47.

The Chapter 7 Trustee's commission pursuant to section 326 of the Bankruptcy Code on $37,000 in receipts is $4,450, plus $1,325 in wildcard exemption available to the Debtor, leaves $31,225 available for creditors, and assuming no other proofs of claim are filed. Interesingly, no fee application was filed by KK&B for the allowance of any fees and costs, and in spite of their apparent work on the State Court Case for more than a year between the time their Retention Application was approved and the time of the Chapter 7 Trustee's filing of the Sale Notice, and the recovery of proceeds from the Midas Resources and Halbig unapproved settlements. Many courts have seen fit in a potential surplus estate sitations to have the chapter 7 trustee file claims. See Yoon v. VanCleef, 498 B.R. 864 (N.D. Ind. 2013). That is appropriate in the case at hand given that nearly half of the Debtor's creditors did not file proofs of claim, and even though the Debtor admitted to the validity of those claims in her bankruptcy schedules, and in light of the proceeds that will be available from a sale of the Litigation Claims, especially if the Court allows a higher and better offer from the Movants. Additionally, even if no further claims are filed,

**ORAL ARGUMENT REQUESTED**

interest on the claims can be paid pursuant to section 726(a)(5) of the Bankruptcy Code, and if there is a surplus after such interest amounts, any remaining balance can then flow back to the Debtor pursuant to section 726(a)(6).  Accordingly, the Court's entertaining of a higher and better offer has significant meaning and import to creditors and parties in interest in the Chapter 7 Case.

### Conclusion

Wherefore, the Movants request that the Court reconsider, grant relief from, or vacate or void the Chapter 7 Trustee's sale of the Litigation Claims in the State Court Case back to the Debtor, and entertain a higher and better offer from the Movants for such claims.  The Movants have no issue with their being an open auction for the Litigation Claims in open Court or other public process, to ensure the integrity thereof and avoid the unfortunate events and mishandling that gave rise to their need to file this Motion in the first place.  Upon direction by the Court, the Movants can also post or provide evidence of sufficient funds to purchase the Litigation Claims for an amount in excess of the $37,000 paid for them allegedly by the Debtor.  The Movants also request such other and further relief as is just and proper.

Dated: May 10, 2021.                              Respectfully submitted,

/s/ Jay M. Wolman_____
Jay M. Wolman – ct29129 of
Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
P: 702-420-2001
F: 305-437-7662
ecf@randazza.com
*Counsel for Movants Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, & Prison Planet TV, LLC*

**ORAL ARGUMENT REQUESTED**

**ORAL ARGUMENT REQUESTED**

## CERTIFICATION

I hereby certify that, on this 10th day of May, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I further certify that copies of the foregoing document are being served by U.S. Mail upon the parties at the addresses below:

Office of The United States Trustee
Attn:  Kim McCabe, Assistant U.S. Trustee
Giamo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

Office of The United States Trustee
Attn:  William K. Harrington, U.S. Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY  10014

Executive Office for U.S. Trustees
Attn:  Clifford J. White III, Director
441 G Street, NW, Suite 6150
Washington, DC 20530

/s/ Jay M. Woman ct29129
Jay M. Wolman

**ORAL ARGUMENT REQUESTED**