**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br><br>ERICA L. GARBATINI,<br><br>        Debtor, | Case No. 18-51587<br>Chapter 7 |

**AMENDED MOTION TO FILE LATE PROOF OF CLAIM AND MEMORANDUM IN SUPPORT THEREOF**

Movants, Alex Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC (collectively, the "Movants"), by and through their undersigned counsel, hereby submit their amended motion[1] (the "Motion") seeking leave to file a late proof of claim against the bankruptcy estate of Erica L. Garbatini, f/k/a Erica Lafferty and Erica Smegielski (the "Debtor" or "Ms. Lafferty").

**MEMORANDUM OF LAW**

**Jurisdiction and Venue**

The Court has jurisdiction over the matters at issue in this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Statement of Facts**

1.      On or about May 23, 2018, Ms. Lafferty, among other plaintiffs, commenced an action in the Connecticut Superior Court, Docket No. FBT-CV18-6075078-S (the "State Court Case"), against Movants, among other defendants, asserting claims including invasion of privacy by false light, defamation and defamation per se, intentional infliction of emotional distress,

---

[1] This amended motion is filed pursuant to the Deficiency Notice (ECF No. 50). Debtor (directly) and through her counsel (via ECF) are being served.

**ORAL ARGUMENT REQUESTED**

1

negligent infliction of emotional distress, civil conspiracy and claims under the Connecticut Unfair Trade Practices Act (collectivley, the "Litigation Claims"). Ms. Lafferty was represented in the State Court Case by the law firm of Koskoff, Koskoff & Bieder, P.C. ("KK&B").

2.      In particular, the Complaint asserts that Ms. Lafferty, and the other plainitffs, are, collectively, the immediate family of four children and two educators killed in a mass shooting at Sandy Hook Elementary School, in Newtown, Connecticut on December 14, 2012. In particular, the Complaint asserts that Ms. Lafferty is the daughter of Dawn Hochsprung, the principal of the school who died that day. The Complaint seeks a recovery of substantial monetary damages against the Movants for the exercise of their First Ammendment rights of freedom of speech and freedom of the press in relation to that matter. Needless to say, the Litgation Claims involve high profile and highly charged matters.

3.      On December 5, 2018 (the "Petition Date"), the Debtor filed her voluntary petition for relief under chapter 7, thereby commencing her chapter 7 case (the "Chapter 7 Case"), and also filed her bankutpcy schedules [ECF No. 1].[2] The Debtor was represented by Suzann Beckett, Esq. of UpRight Law LLC. This was the Debtor's second bankruptcy filing, as she had previously filed for chapter 7 on March 1, 2010 as Case No. 10-50469, and received her standard discharge on June 11, 2010.

4.      Prior to the Petition Date, Movants had filed a special motion to dismiss against Debtor's claims pursuant to Conn. Gen. Stat. § 52-196a. Although that motion was subsequently terminated as a sanction, rather than on the merits, that sanction occurred while the Superior Court lacked subject matter jurisdiction and that order of termination is void. Should Movants prevail

---

[2] Movants request that the Court take judicial notice of the docket and all filings in the Debtor's Chapter 7 Case.

**ORAL ARGUMENT REQUESTED**

on their special motion to dismiss, they will be entitled to their costs and reasonable attorney's fees, which are anticipated to be in the hundreds of thousands of dollars, though Movants had previously agreed to waive all but $1. Should Movants otherwise prevail in the litigation, they will be entitled to their taxable costs, which would be anticipated to be no less than $500.

5. On the Debtor's Schedule E/F (Creditors Who Have Unsecured Claims) filed on the Petition Date, in response to question 4 regarding "List all your nonpriority unsecured claims", the Debtor did not disclose the claims of Movants. [ECF No. 1, pp. 20-27]. This was a knowingly false statement by the Debtor, and a violation of Debtor's counsel's duties pursuant to section 707(b)(4)(D) of the Bankruptcy Code, which provides that "[t]he signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect."

6. Likewise, on the Debtor's Schedule H (Your Codebtors), Debtor did not include the other plaintiffs joined and consolidated in the state court actions. [ECF No. 1, p. 30]. This was also a knowingly false statement by the Debtor, and a violation of the Debtors counsel's duties pursuant to section 707(b)(4)(D) of the Bankruptcy Code.

7. Similarly, on the Debtor's *Statement of Financial Affairs* (the "SoFA") in response to question 9, which asks "within the last 2 years before you filed for bankruptcy, were you a party to any lawsuit, court action or administrative proceeding" the Debtor also checked "No." [ECF No. 1, 38]. This was also a knowingly false statement by the Debtor, and a violation of the Debtors counsel's duties pursuant to section 707(b)(4)(D) of the Bankruptcy Code.

8. In light of the high profile nature of the Litigation Claims, which involve a story of worldwide public interest, and indeed the loss of the Debtor's mother, as well as the fact that the Debtor filed for bankrupcy only about seven (7) months after the Complaint was filed, it is

**ORAL ARGUMENT REQUESTED**

inconceivable that the Debtor merely forgot to list the anti-SLAPP motion as a liability in her bankruptcy case.

9. Indeed, <u>nowhere</u> in any of the Debtor's initial filings on Petition Date did she make any reference whatsoever to the State Court Case in which she is the lead plaintiff.

10. The BNC Certificate of mailing of the Debtor's *Notice of Bankruptcy* [ECF No. 3] likewise reflects no notice of the bankruptcy to the Movants or their counsel. [ECF No. 7].

11. According to the Debtor's bankruptcy docket, the Debtor's 341 meeting of creditors was held and concluded on January 2, 2019, and on January 11, 2019, the Chapter 7 Trustee fild a report and notice of assets and a notice to file proofs of claims [ECF No. 9 and 10]. The BNC notice of mailing for the notice of assets and to file claims was also not served on Movants or their counsel [ECF No. 12].

12. On January 21, 2019, the Debtor filed an amendment (the "<u>Amendment</u>") to her Schedule A/B, and in response to question 33, indicated that she had "Pending Litigation against Alex Jones Attorney: Koskoff, Koskoff & Bleder CN CV18-6075078" and listed it with an "unknown" value. [ECF No. 13, p. 5]. The Debtor also listed the Litigation Claims as exempt on her Schedule C pursuant to her "wildcard" exemption in section 522(d)(5) of the Bankruptcy Code. Neither this filing, nor indeed at any other time in her Chapter 7 Case to date, has the Debtor ever amended her SoFA, question 10, to reflect the pendency of the State Court Case, thus continuing to leave that document materially inaccurate. Neither did she amend it to include her potential liability to Movants. Notwithstanding the Debtor's filing of the Amendment, at no time did the Debtor ever give notice of her bankrupcy to the Movants or their counsel.

13. Likewise, at no point during the entire two (2) year or more pendency of the Debtor's Chapter 7 Case has the Debtor, or the Debtor's counsel, filed any notice of the Debtor's

**ORAL ARGUMENT REQUESTED**

pending bankruptcy and the automatic stay in the State Court Case pursuant to Connecticut Practice Book § 14-1, and as is common practice and courtesy to not only given the state court judge notice of such matter, but also to indicate that the Chapter 7 Trustee was the real party in interest given that the Litigation Claims were property of the Debtor's bankruptcy estate.

14. On November 22, 2019, which was fully eleven (11) months after the Detor filed her Amendment, the Chapter 7 Trustee filed an application (the "Retention Application") to employ KK&B as special counsel to the estate pursuant to section 327(e) of the Bankrupcy Code. KK&B's retention application represented as follows:

> Prior to the commencement of the debtor's above-captioned bankruptcy case, Koskoff, Koskoff & Bieder, P.C. entered into a retainer agreement with the debtor. Said agreement provided that said firm is entitled to a one-third contingency fee in addition to the reimbursement of out-of pocket expenses and disbursements. Pursuant to C.G.S. §52-251c, including subsection (c) of said section, a client is permitted to waive certain fee limitations set forth in said statutory provision under certain conditions including but not limited to the substantially complex or unique nature of the medical and/or legal issues in the case, and the likelihood of extensive investigation and discovery proceedings. The debtor herein waived the statutory contingency fee limits in this case, except for the limitation that the fee will not exceed one-third of the recovery, the waiver of which limitation is not permitted under the statutory scheme. Said retainer agreement provided further that Attorney Ron Etemi of Trantolo & Trantolo is a participating counsel and will share in a fee paid to Koskoff, Koskoff & Bieder P.C.

15. On December 18, 2019, the Court entered an order authorizing the appointment of KK&B as special counsel [ECF No. 25].

16. Based on the statements in KK&B's Retention Application, the Debtor's filed bankrupcy schedules fail to include two (2) more material matters. First, KK&B was at least a contingent and unliquidated creditor of the Debtor that should have been listed on her Schedule F (General Unsecured Claims), but was not. Second, the Debtor's pre-petition contingency fee

**ORAL ARGUMENT REQUESTED**

agreement with KK&B should have been listed on the Debtor's Schedule G (Executory Contracts and Unexpired Leases), but it also was not.

17. On October 23, 2020, KK&B filed a *Memorandum Concerning the Status of Discovery* in the State Court Action announcing a settlement, in principle, with a defendant in that matter, Midas Resources, Inc. [State Court Action Docket No. 302.00]. And, at a status conference in the State Court Action on October 27, 2020, KK&B disclosed a settlement in principle with another defendant in that matter, Wolfgang Halbig.

18. On February 11, 2021, the Chapter 7 Trustee filed a *Proposed Notice of Sale of Property* (the "Sale Notice") [ECF No. 27], which referred to the Litigation Claims, and on February 16, 2021, filed a *Notice* thereof [ECF No. 28]. The Sale Notice provided as follows:

> Notice is hereby given by Richard M. Coan, Trustee in the above case, that he intends to sell property of the above-captioned bankruptcy estate at private sale pursuant to an Agreement between Richard M. Coan, Trustee, as Seller, and the debtor, Erica L. Garbatini, Buyer. The agreed consideration that Erica L. Garbatini will pay for the property stated below is $37,000.00 plus a possible additional sum, as described below. If there are no objections or higher offers, the contemplated sale is scheduled to take place as soon as possible after the hearing date set forth below. If there are any objections or higher offers, the sale will take place as soon as practicable after the entry of an appropriate order by the United States Bankruptcy Court.
>
> The property to be sold is the following: All of the debtor's causes of action including but not limited to claims for invasion of privacy by false light, defamation and defamation per se, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy and claims under the Connecticut Unfair Trade Practices Act against Alex Jones, et als., as set forth in a civil action styled Erica Lafferty et al. v. Alex Emric Jones et al., pending in the Connecticut Superior Court for the Judicial District of Waterbury and bearing Docket No. UWY-CV18-6046436-S. The debtor has agreed to purchase these causes of action from her bankruptcy estate for $37,000.00. This sum appears to be sufficient to pay all administrative expenses of the bankruptcy case and all

**ORAL ARGUMENT REQUESTED**

> allowed claims with interest. In addition, if other creditors file allowed claims prior to the time that the trustee commences his final distribution in this case, the debtor has agreed to pay to the Trustee, from future recoveries derived from the above-described civil action, sufficient sums to pay said additional allowed claims in full together with interest allowed to such additional creditors.

19.   Inexplicably, at no point in time did the Chapter 7 Trustee <u>ever</u> seek to solicit any offer from the Movants (or their counsel), as the very defendants in the State Court Case, regarding their interest in purchasing the Litigation Claims from the bankruptcy estate, much less even notify the Movants or their counsel of the proposed sale itself. As is obvious and a matter of common sense, Movants would be very motivated to purchase the Litigation Claims, yet the Chapter 7 Trustee made absolutely no effort to reach out to them or notify them. Even the most <u>minimal</u> of good faith efforts to market the Litigation Claims for sale would have entailed at least sending a letter, email or some notice of the sale to the Movants or their counsel in order to advise them of the matter, and provide them an opportunity to bid, yet this was not done.

20.   On April 6, 2021, KK&B filed a *Withdrawal of Action Against Particular Defendants* as to Wolfgang Halbig and Midas Resources, Inc., in the State Court Action. [State Court Action Docket Nos. 317.00 & 318.00]. This indicates that, at some point prior thereto, the previously-announced settlements with those defendants were consummated. The Debtor's bankruptcy docket to date does not reveal that the Debtor filed a motion or that the Court entered an order approving the compromise of her claims against those defendants pursuant to Bankruptcy Rule 9019(a). "The specific factors which a bankruptcy court considers when making this determination include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." *Jeffrey v.*

**ORAL ARGUMENT REQUESTED**

*Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). The Debtor's bankruptcy docket does not reflect that the Court was, at any time, asked to consider these factors.[3]

21. The Debtor's bankruptcy docket to date does not reveal that the Court has entered any written sale order approving any sale of the Litigation Claims,[4] however, on April 19, 2021, the Chapter 7 Trustee filed a *Report of Sale* [ECF No. 35], which indicated that the sale of the litigation claims was concluded that day through his receipt of $37,000.

22. Movants had no actual or constructive notice of the Debtor's Chapter 7 Case, the Sale Notice, or of the proposed sale of the Litigation Claims. In fact, the Movants only learned of the Debtor's bankruptcy filing and of the sale of the Litigation Claims because Movants' counsel was conducting PACER litigation searches as background research and stumbled upon the Debtor's bankruptcy filing.

23. On May 10, 2021, Movants moved for relief from or to vacate or void the Chapter 7 Trustee's Sale of Litigation Claims Back to the debtor. [ECF No. 36]. That motion remains pending.

24. Had Movants been served with the required notice of the bar date, they would have filed a timely proof of claim.

## Legal Analysis

Movants have been potential creditors of the Debtor and thus should have received notice of her Chapter 7 Case pursuant to Bankrutpcy Rule 2002(a). In particular, at the time the petition was filed, certain of the Litigation Claims allowed for an award of attorney's fees and costs to the

---

[3] As the compromise of these claims necessarily occurred prior to April 19, 2021, they had not been purchased by Ms. Lafferty and belonged to the Bankrtupcy Estate.

[4] Accordingly, there is no finding of "good faith" and thus no statutory mootness pursuant to section 363(m) of the Bankruptcy Code.

**ORAL ARGUMENT REQUESTED**

Movants, as defendants, if the claims are unsuccessful, which rendered Movants as at least contingent, unliquidated creditors of the Debtor's bankruptcy estate. See Conn. Gen. Stat. § 52-196a; see also Connecticut Practice Book § 18-5(a).

The constitutional standard for due process requires that known creditors in a bankruptcy case receive actual notice of the bar date. *City of New York v. N.Y., N.H. & H.R. Co.*, 344 U.S. 293, 296-97 (1953). "Known creditors . . . must be afforded notice 'reasonably calculated, under all the circumstances, to apprise' them of the pendency of the bar date." *In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). "[I]f a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged." *Grant v. U.S. Home Corp.* (*In re U.S. Home Corp.*), 223 B.R. 654, 658 (Bankr. S.D.N.Y. 1998) (citation omitted). In a chapter 7 case, a creditor who is not scheduled and therefore does not receive notice, but nonetheless had actual knowledge of the case in time to file a timely proof of claim will have his claim subordinated to timely filed claims of other creditors. 11 U.S.C. § 726(a)(2)(C). *See Zidell, Inc. v. Forsch* (*In re Coastal Alaska Lines, Inc.*), 920 F.2d 1428, 1430-31 (9th Cir. 1990); cf. *Lompa v. Price* (*In re Price*), 871 F.2d 97 (9th Cir. 1989).

Movants, however, did not have actual knowledge of the petition, the bar date, or these proceedings. *See* Declaration of Alex E. Jones [ECF No. 36-2 at ¶¶ 6-8]. Thus, in the absence of notice, constitutional due process requires that Movants be permitted to file a late proof of claim.

Movants otherwise have excusable neglect to permit the filing of a lat proof of claim. Bankruptcy Rule 9006(b)(1), provides, in pertinent part: "[W]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion ... permit the act to be done where the failure to act was the result of excusable

**ORAL ARGUMENT REQUESTED**

neglect." The Supreme Court set out the parameters of excusable neglect in *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993). In that case, the Court held that excusable neglect is an "elastic concept," and is not limited to situations where the failure to timely file was due to circumstances beyond the filer's control. *Pioneer*, 507 U.S. at 392. Rather, excusable neglect may encompass situations involving "inadvertence, mistake or carelessness." *Id*. at 388.  The determination of whether neglect is "excusable" is an equitable one. *Id.* at 395. In reaching its decision, a court will consider "all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*.

Lack of knowledge of Debtor's bankruptcy, the causes of which include her own failure to file proper notice in the state court and the Trustee's failure to substitute himself as a party plaintiff, render the untimely filing inadvertent.  There is no danger of prejudice to the debtor—the Movants' claims are contingent and unliquidated.  The length of the delay is not long where little has occurred in this case and the Debtor's and Trustee's own delayed actions have tended to stretch out these proceedings.  Similarly, there will be minimal to no impact on judicial proceedings where no plan has been filed yet.  The untimely filing was outside the control of Movants and Movants have acted promptly upon learning of the matter, acting in good faith.

## Conclusion

Wherefore, the Movants request that the Court permit them to file a late proof of claim. The Movants also request such other and further relief as is just and proper.

Dated: May 28, 2021.                                    Respectfully submitted,

/s/ Jay M. Wolman_____
Jay M. Wolman – ct29129 of

**ORAL ARGUMENT REQUESTED**

Randazza Legal Group, PLLC
100 Pearl Street, 14th Floor
Hartford, CT 06103
P: 702-420-2001
F: 305-437-7662
ecf@randazza.com
*Counsel for Movants Alex E. Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, & Prison Planet TV, LLC*

**ORAL ARGUMENT REQUESTED**

11

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on May 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

I FURTHER CERTIFY that on May 28, 2021, a true and correct copy of the foregoing document was deposited in the United States Mail, first class postage prepaid, properly addressed to each of the following:

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Holley L. Claiborn on behalf of U.S. Trustee
Office of The United States Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

Synchrony Bank
c/o PRA Receivables Management, LLC
P.O. Box 41021
Norfolk, VA 23541

Erica L. Garbatini
33 Hart Street
Watertown, CT 06795

/s/ Jay M. Woman ct29129
Jay M. Wolman

**ORAL ARGUMENT REQUESTED**