**UNITED STATES BANRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| ERICA GARBATINI, | : | Bankruptcy Case No. 18-51587 (JAM) |
| | : | |
| Debtor. | : | |

**RICHARD M. COAN, TRUSTEE'S**
**OBJECTION TO MOTION FOR RELIEF**
**FROM, OR TO VACATE OR VOID, CHAPTER 7**
**TRUSTEE'S SALE OF LITIGATION CLAIMS BACK TO DEBTOR**

Richard M. Coan, Trustee of the Bankruptcy Estate of Erica Garbatini (the "Trustee"), by and through his attorneys, Coan, Lewendon, Gulliver & Miltenberger, LLC, hereby objects to the motion of Alex Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, and Prison Planet TV, LLC (collectively, "Jones"), and state as follows:

**INTRODUCTION**

Alex Jones is engaged in abusive litigation tactics and is obstructing the administration of the Erica Garbatini ("Garbatini") bankruptcy case. In the Superior Court of the State of Connecticut, Alex Jones is accused of creating and propagating "loathsome, false narratives about the Sandy Hook shooting and its victims," and promoting a "deeply painful, and defamatory lie in the face of a mountain of evidence to the contrary. . ."[1] In state court, Jones has been sanctioned for discovery abuse, harassment of counsel, and being disruptive of court proceedings.[2]

---

[1] *See Complaint, Erica Lafferty, et al. v. Alex Jones, et al.,* UWY-CV18-6046436-S, at ¶ 7 and 8

[2] *See Exhibit A, Transcript of Decision of Judge Bellis.*

Jones is on record in the Superior Court stating that he is seeking no money from Garbatini. In his *Memorandum in Support of Special Motion to Dismiss Plaintiff's Complaint,* Jones wrote as follows:

> Defendants, however, waive any fees over and above the sum of $1. They have no desire to collect money for the parents of Sandy Hook victims. Nevertheless, the First Amendment implications of this case are so significant that they felt that they must invoke the Anti-SLAPP law.

*Erica Lafferty, et al. v. Alex Jones, et al.,* UWY-CV18-6046436-S, Docket No. 114, November 21, 2018, at p. 2, n.1.

Jones' behavior in this federal court is no different. He constructs conspiracy theories from whole cloth to suppose wrong-doing where none exists. He imagines holding claims against the Garbatini bankruptcy case when he has none. He trumpets due process in an effort to convert the orderly administration of this 100 cent on the dollar bankruptcy case into a circus. *See generally Motion for Relief From, or to Vacate or Void, Chapter 7 Trustee's Sale of Litigation Claims Back to the Debtor, and Memorandum of Law in Support Thereof*, ECF No. 36 (the "Rule 60 Motion").

Alex Jones has no standing in this bankruptcy case. Alex Jones has no claim against the bankruptcy estate. Alex Jones has no genuine interest in promoting the interests of creditors or the Debtor. Alex Jones is merely attempting to abuse this Court for his own advantage in state court.

## STATEMENT OF THE FACTS

*A. Chronology.*

The events relevant to the Rule 60 Motion are set forth in the following chronology:

| | |
|---|---|
| May 23, 2018 | Superior Court writ, summons, and complaint in *Lafferty v. Jones* served on Jones. |
| June 26, 2018 | *Lafferty v. Jones* returned to the Superior Court for the Judicial District of Fairfield at Bridgeport and given docket number UWY-CV18-6046436-S. |
| November 21, 2018 | Jones files his "Special Motion to Dismiss" in *Lafferty v. Jones*. |
| December 5, 2018 | Debtor files voluntary petition commencing *In re Erica Garbatini a/k/a Lafferty*. [ECF No. 1] |
| December 30, 2018 | Debtor uploads information to Trustee disclosing *Lafferty v. Jones.* |
| January 2, 2019 | First Meeting of Creditors held and closed. |
| January 8, 2019 | Amex appears in bankruptcy court through counsel [ECF No. 9] |
| January 11, 2019 | Trustee's Report of Assets filed and claim bar date set.  [ECF No. 10 and 11] |
| January 21, 2019 | Debtor files amended schedules A, B, and C. [ECF No. 13] |
| March 1, 2019 | Waterbury CT Teachers FCU appears through counsel [ECF No. 14] |
| March 6, 2019 | Debtor receives her discharge.  [ECF No. 15] |
| April 11, 2019 | Proof of Claim Bar Date |
| May 11, 2019 | Trustee's deadline to file proofs of claim. |
| June 18, 2019 | Superior Court (Bellis, J.) strikes Jones' Special Motion to Dismiss as a discovery sanction, for harassment of counsel, and for disruption of court proceedings.  *See Exhibit A,* Transcript of Hearing. |
| November 22, 2019 | Trustee's application to retain Koskoff Koskoff & Bieder ("KKB") as special litigation counsel  [ECF No. 17] |
| December 18, 2019 | Order permitting retention of KKB [ECF No. 25] |
| July 23, 2020 | Connecticut Supreme Court affirms the sanction of striking the Special Motion to Dismiss.  *See Lafferty, et al. v. Jones, et al.,* 336 Conn. 332 (2020) |
| February 11, 2021 | Trustee files his proposed Notice of Sale of causes of action in *Lafferty v. Jones*. [ECF No. 27] |
| March 8, 2021 | Trustee's Notice of Sale Objection/Better Offer Deadline |
| March 10, 2021 | Trustee's delivery of Bill of Sale in Escrow pending receipt of sale proceeds. |
| March 11, 2021 | Debtor signs release in favor of defendants Wolfgang Halbig and Midas Resources, Inc. in *Lafferty v. Jones.* |
| March 19, 2021 | Wolfgang Halbig delivers settlement payment to KKB to resolve claims of the sixteen plaintiffs in *Lafferty v. Jones,* including the claims of the Debtor. |
| April 1, 2021 | Midas Resources, Inc. delivers settlement payment to KKB to resolve claims of the sixteen plaintiffs in *Lafferty v. Jones,* including the claims of the Debtor. |
| April 6, 2021 | The sixteen plaintiffs in *Lafferty v. Jones* file a Withdrawal of Action Against Particular Defendants, Wolfgang Halbig and Midas Resources, Inc.. |
| April 16, 2021 | KKB sends sale price to Trustee |
| April 17, 2021 | Trustee receives settlement check |

| April 19, 2021 | Trustee's receipt of sale proceeds per confirmation of sale filed with bankruptcy court [ECF No. 35]. |
| --- | --- |
| May 10, 2021 | Jones files the Rule 60 Motion. |

B. *Financial Status of the Bankruptcy Estate.*

Currently, the assets and liabilities of the bankruptcy estate are as follows:

| Description | Asset | Liabilities |
| --- | --- | --- |
| Cash – Proceeds of Causes of Action[3] | $36,980.24 | |
| Trustee Fee (estimated) | | $4,448.58 |
| Discover Bank | | $8,778.76 |
| TD Bank, N.A. | | $3,962.95 |
| Synchrony Bank, N.A. | | $1,222.35 |
| PYOD, LLC | | 982.10 |
| Capital One, N.A. | | $506.19 |
| Waterbury Hospital | | $250.00 |
| American Express National Bank | | 9653.73 |
| Quantum 3/Comenity Bank | | $1,413.27 |
| Quantum 3/Bluestem and SCUSA | | $769.85 |
| PYOD, LLC | | 437.97 |
| Citibank, N.A. | | $2,428.30 |
| TOTAL | $36,980.24 | $34,854.05 |

The Waterbury CT Federal Credit Union appeared through counsel on March 1, 2019, but the creditor did not file a proof of claim.

C. *Trustee's Position on Sale of Claims to Alex Jones.*

The Trustee considers this bankruptcy case to be a 100 cent on the dollar case. The Trustee has no intention of selling Garbatini's claims against Jones to Jones without Garbatini's

---

[3] The estate has been charged $19.76 in bank fees.

consent. Garbatini has paid sufficient funds to pay all claim-filing creditors in full and any remaining sale proceeds after the payment of interest would be a surplus in the bankruptcy estate payable to Garbatini. *See* 11 U.S.C. § 726(a)(6). Under the current status of the case, if Garbatini were to pay more, the Trustee would simply return the money to her.

    *D. The Alleged Claims of Alex Jones.*

In his Rule 60 Motion, Jones alleges that he is a creditor of the Garbatini bankruptcy estate. The facts show otherwise.

    1. <u>Jones "claim" pursuant to Conn. Gen. Stat.52-196a</u>.

Conn. Gen. Stat., § 52-196a is Connecticut's "anti-SLAPP" statute. It permits the filing of a "Special Motion to Dismiss" and provides for sanctions against plaintiffs in the event that a defendant's Special Motion to Dismiss is granted. Conn. Gen. Stat., § 52-196a provides, in pertinent part, as follows:

> (b) In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim.
>
> . . .
> (f) (1) If the court grants a special motion to dismiss under this section, the court shall award the moving party costs and reasonable attorney's fees, including such costs and fees incurred in connection with the filing of the special motion to dismiss.

Conn. Gen. Stat., § 52-196a.

Jones has no claim against the bankruptcy estate (or any other party) on the basis that a court granted or might grant his Special Motion to Dismiss. Jones' Special Motion to Dismiss was stricken by the Superior Court because of Jones' discovery failures and abusive litigation

tactics. The Superior Court found that Jones engaged in conduct to "harass[] or intimidate[]" opposing counsel by accusing them of planting child pornography, and calling opposing counsel "a bitch, a sweet little cupcake, a sack of filth." *Transcript of Proceedings,* June 18, 2019, at p. 7. As a result, the Superior Court struck Jones Special Motion to Dismiss –

> So for all these reasons, the Court is denying the Alex Jones defendants the opportunity to pursue their special motions to dismiss and will award attorney's fees upon further hearing and the filing of affidavits regarding attorney's fees. I would note that the attorney's fees will be related only to the conduct relating to the child pornography issue and not for the discovery failures.

*Transcript of Proceedings,* June 18, 2019, at p. 7. The Supreme Court of Connecticut affirmed the decision of the Superior Court. *Lafferty v. Jones,* 336 Conn. 332, 382 (2020). In sum, Jones has no claim against any party on the basis of his Special Motion to Dismiss, but the *Lafferty* plaintiffs do have claims against him.[4] Jones assertions that he has claims against the bankruptcy estate based on his Special Motion to Dismiss are completely false.

    2. <u>The alleged claims of Jones under Practice Book § 18-5.</u>

Under Connecticut practice, a party that obtains a judgment in its favor may have the clerk of the Superior Court tax costs against its adversary. *See generally Yeager v. Alvarez,* 134

---

[4] Jones has recently argued that Connecticut courts had no subject matter jurisdiction when it struck his Special Motion to Dismiss and thus the order is void. *See Motion to File Claim After Claims Bar Date,* ECF No. 51, at ¶4. Jones gives no explanation as to why an order of the Superior Court affirmed by the Supreme Court of Connecticut is void, but, upon information and belief, the claim is based on the death of one of the co-plaintiffs in *Lafferty v. Jones* and a failure to substitute the deceased's fiduciary.

There are fifteen living plaintiffs in *Lafferty v. Jones.* In a multi-party action, the incapacity of one party does not affect the Court's ability to proceed as to the others. *See Lucarelli v. Earle C. Dodds*, Inc., 121 Conn. 640, 643 (1936) (where one defendant had died, and no representative of his estate was appointed, court could act on matters concerning co-defendant). Moreover, the Connecticut Supreme Court has held that the nonsubstitution of a fiduciary for a deceased party is waivable. *See Ashmead v. Colby*, 26 Conn. 287, 305 (1857) (nonsubstitution of estate for deceased party is waivable); *see also Poglitsch v. Camp Bethel Ass'n, Inc.*, 2021 WL 1400927, at *9 n.8 (Conn. Super. Mar. 1, 2021) (Farley, J.) ("The requirements of § 52-599 are waivable."). Finally, Jones does not explain how, if the Superior Court truly lacked subject matter jurisdiction, it could possibly make any award on his Special Motion to Dismiss.

Conn. App. 112, 123-24 (2012). Connecticut Practice Book § 18-5 provides, in pertinent part, as follows:

> (a)  Except as otherwise provided in this section, costs may be taxed by the clerk in civil cases fourteen days after the filing of a written bill of costs provided that no objection is filed. If a written objection is filed within the fourteen day period, notice shall be given by the clerk to all appearing parties of record of the date and time of the clerk's taxation. The parties may appear at such taxation and have the right to be heard by the clerk.

Practice Book § 18-5. *Taxation of Costs; Appeal*. The costs that may be awarded under Practice Book § 18-5 are defined in Conn. Gen. Stat., § 52-257. In addition to $50 for all proceedings before trial and a maximum of $275 for the trial of an issue of fact, examples of taxable costs are (i) for witnesses attending court, (ii) out of state depositions, (iii) copies of records used in evidence, (iv) costs associated with service of process, (v) investigative costs not exceeding $200, and (vi) the recordation of depositions of practitioners of the "healing arts."

Jones cannot "prevail" against the bankruptcy estate or the pre-petition debtor in *Lafferty v. Jones* because they are no longer plaintiffs in the case against him. When judgment enters in that case, neither the estate nor the pre-petition debtor will be parties for which, or against whom, costs may be taxed. In the (unlikely")[5] event that Jones prevails at trial, he will receive his costs

---

[5]   On June 1, 2021, the Superior Court entered an order in the Lafferty v. Jones case that provides, in pertinent part, as follows:

> The plaintiffs filed a motion with the court seeking the overdue compliance on November 12, 2020 and the Jones defendants did not even file an objection until May 5, 2021. The court's ruling of May 14, 2021 confirmed that the outstanding discovery from the Jones defendants was overdue. At this point, the defendants are not in compliance with their obligation to produce that discovery which is in their knowledge, possession, or power. To the extent that this motion seeks, at this late date, a further extension of time to produce the already overdue supplemental compliance, it is granted as follows: complete, final supplemental compliance must be made by June 28, 2021, with compliance to begin immediately on a rolling basis. Failure to comply with this order may result in sanctions including but not limited to a default.

*Lafferty v. Jones,* UWY-CV-18-6036436-S, Order 421277.

from his adversaries – the fourteen plaintiffs, including the buyer of the Garbatini claims (which happens to be Garbatini). There is no viable claim for trial costs against the estate because Jones will not prevail against the estate or Garbatini as the debtor (as distinguished from Garbatini, the buyer).

Moreover, Jones has not alleged that he incurred any costs prior to the Trustee's sale of the causes of action to Erica Garbatini. Upon information and belief, based primarily on the docket sheet of *Lafferty v. Jones,* Jones did not try any issue of fact prior to the Petition Date, did not incur any expenses for witness attendance in court, expenses for out of state depositions, serve any process, or conduct expert depositions (no party to the civil action has designated an expert witness). Jones incurred no taxable costs during the period of time that the debtor Garbatini or the estate owned the causes of action.

## ARGUMENT AND AUTHORITY

*A. Rule 60.*[6]

Fed. R. Bankr. P. 9024 provides that, with certain exceptions not relevant to this matter, Fed. R. Civ. P. 60 ("Rule 60") applies in bankruptcy proceedings. Fed. R. Civ. P. 60 provides, that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for, *inter alia,* mistake, inadvertence, surprise or excusable neglect, newly discovered evidence, a void judgment, or any other reason that justifies relief.

Jones does not specify the grounds on which he seeks relief under pursuant to Rule 60. His Rule 60 motion refers to two subsections of Rule 60(b) – subsection (4), which permits relief

---

[6] Jones filed his motion pursuant to Fed. R. Civ. P. 59 and 60. Fed. R. Bankr. P. 9023 incorporates Fed. R. Civ. P. 59. Fed. R. Bankr. P. 9023 and its analog Fed. R. Civ. P. 59 establish a process to obtain a new trial. There was no trial in the Garbatini bankruptcy case and Fed. R. Civ. P. 59 does not apply to this matter.

under Rule 60 if "the judgment is void," and subsection (6), which permits relief "for any other reason that justifies relief.

There is no judgment or order of this Court to which Rule 60(b)(4) might apply. Fed. R. Civ. P. 54 provides, in pertinent part, as follows: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Jones identifies no judgment, decree, order, or other court action from which an appeal lies, and there is none. Accordingly, Rule 60(b)(4) does not apply.

Rule 60(b)(6) is "a grand reservoir of equitable power to do justice in a particular case. But that reservoir is not bottomless. Recognizing Rule 60(b)(6)'s potentially sweeping reach, courts require the party seeking to avail itself of the Rule to demonstrate that extraordinary circumstances warrant relief." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)(internal quotation marks and citations omitted). "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Tapper v. Hearn*, 833 F.3d 166, 170 (2d Cir. 2016) quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citing *House v. Sec'y of Health & Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982)). Although "it should be broadly construed to do substantial justice, . . . final judgments should not be lightly reopened." *Id*. Finality outweighs a losing party's concern that justice was not done. *Tapper,* 833 F.3d at 172; *In re Terrorist Attacks on September 11, 2001,* 741 F.3d 353, 357 (2d Cir. 2013)

    B. *Jones Has No Standing*.

The law of standing in bankruptcy cases is well-settled. In order to have standing, a party must be "a person aggrieved"—a person "directly and adversely affected pecuniarily" by the challenged order of the bankruptcy court. *Dish Network Corp. v. DBSD North Am. (In re DBSD North Am., Inc.)*, 634 F.3d 79, 89 (2d Cir. 2011) (quoting *Int'l Trade Admin. v. Rensselaer*

*Polytechnic Inst*., 936 F.2d 744, 747 (2d Cir. 1991)); *see also Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 468 B.R. 603, 612 (S.D.N.Y. 2012). "The 'aggrieved person' standard requires that an appellant show both 'injury in fact' under Article III, and that the injury suffered is direct and financial." Id., 468 B.R. at 612; s*ee also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 642 (2d Cir. 1988); *In re Old HB, Inc.*, 525 B.R. 218, 221-22 (Bankr. S.D. N.Y. 2015).

The aggrieved person standard is "stricter than Article III's injury in fact test, and its stringency is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." *Katz v. Goodyear Tire and Rubber Co. (In re Barnet)*, 737 F.3d 238, 242 (2d Cir. 2013)

      1.      <u>Jones has not filed a proof of claim</u>.

Fed. R. Bankr. P. 3002(a) provides, in pertinent part, as follows: "A secured creditor, unsecured creditor, or equity security holder must file a proof of claim or interest for the claim or interest to be allowed. . ." Jones has never filed a proof of claim under penalty of perjury and is not entitled to a distribution from the bankruptcy estate. Jones has no pecuniary interest in the bankruptcy proceedings.

If Jones files a proof of claim, it is likely that the Trustee will object to it and Garbatini might as well. This Court should not even consider upending the administration of this bankruptcy estate until, at a minimum, it has determined that Jones has an allowed proof of claim.

2. <u>Jones does not have a claim against the Garbatini estate</u>.

While failing to file a proof of claim under penalty of perjury, Jones asserts in pleadings that he has claims against the Garbatini bankruptcy estate pursuant Conn. Gen. Stat., § 52-196a and Connecticut Practice Book § 18-5.

As shown above, Jones does not now and will never have a claim pursuant to Conn. Gen. Stat., § 52-196a because his Special Motion to Dismiss was stricken as a discovery sanction – a fact that Jones omits from his Rule 60 Motion. A party must prevail on a Special Motion to Dismiss to recover under Conn. Gen. Stat., § 52-196a and Jones will never satisfy this requirement.

Further, Jones has failed to specify any compensable cost that he incurred prior to the filing of the Garbatini bankruptcy case (or the Trustee's sale). Accordingly, Jones has no claim against the bankruptcy estate pursuant to Practice Book § 18-5. In the unlikely event that Jones prevails in *Lafferty v. Jones*, he will recover his costs from the plaintiffs against whom he obtains judgment just like every other litigant in Superior Court. Neither the debtor nor the estate is currently or will ever again be a plaintiff in *Lafferty v. Jones*.

3. <u>A party's status as a defendant in litigation with a bankruptcy estate does not give that party standing to appear in the underlying bankruptcy case.</u>

Jones status as a defendant in *Lafferty v. Jones* does not provide him standing to appear in the Garbatini bankruptcy case because it grants him no pecuniary interest – or any other legal interest – in the bankruptcy proceedings. A party defending claims being prosecuted by a bankruptcy trustee has no standing in the underlying bankruptcy case. *In re Dunne*, 2015 WL 7625609 at *5 (interest in opposing trustee's claims does not provide standing) *affirmed In re Dunne*, 684 Fed.Appx. 85 (2d Cir. 2017). Certainly, where the need to defend is not the result of a bankruptcy court order, the defense of litigation does not provide the defendant with standing

11

to challenge the order. "To suggest that having to defend against this claim is a direct and adverse pecuniary effect of the Order hardly makes sense, as the lawsuit existed even before the Order did." *In re Old HB, Inc.*, 525 B.R. at 222.

    4. <u>Jones is not an unsuccessful bidder.</u>

Jones also cites authority that grants standing to an unsuccessful bidder at a bankruptcy auction. *See* Rule 60 Motion, at p. 13-14.

Jones was not an unsuccessful bidder at a bankruptcy auction and these cases provide him with no basis for relief. *In re Hat,* 310 B.R. 752, 758 (Bkrtcy.E.D.Cal.,2004), cited by Jones, was a motion to reconsider an order approving a sale, not a Rule 60 motion. Jones also cites *In re Colony Hill Associates,* 111 F.3d 269, 272 (2d Cir. 1997) and *In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997), which were appeals of sale orders by unsuccessful bidders.

Jones is not an unsuccessful bidder. His Rule 60 Motion is not an appeal of or a motion to reconsider a sale order entered after an auction. Jones does not have standing as an unsuccessful bidder.

    *C. Jones Has No Claim for a Due Process Violation.*

No act, omission, event or order in the Garbatini bankruptcy case has caused Jones to lose any property, claim, or legal right.[7] Congress codified the remedy for a debtor's failure to schedule a creditor directly into the U.S. Bankruptcy Code. In an asset case, any claim of such a creditor is not discharged. 11 U.S.C. § 523(a)(3). Due process requires nothing more.

To prevail on a claim that a party was denied procedural due process, the party must be able to demonstrate (1) that Defendants deprived him of a cognizable interest in 'life, liberty, or

---

[7] This section is premised on the truth of Jones' representation that he had no notice of the Garbatini bankruptcy case until May of 2021. If this representation is untrue, then Jones has simply failed to timely participate in the events in this bankruptcy case.

property,' (2) without affording him constitutionally sufficient process. U.S. CONST. amend. V, § 1; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). Jones has failed to allege that he has been deprived of a "cognizable interest" in property.

Jones cites this Court to *Eliot v. General Motors, LLC (In re Motors Liquidation Co.)*, 829 F.3d 135 (2d Cir. 2016). In that case, creditors with claims arising from ignition switch defects brought adversary proceedings against a non-debtor, and the non-debtor successor moved to enjoin the claims based on "free and clear" language in the bankruptcy court's sale order. The Second Circuit held that the creditors' affirmative claims constituted "property" such that a deprivation of that property would trigger due process scrutiny. *In Matter of Motors Liquidation Company*, 829 F.3d at 158. The Second Circuit then held that the "free and clear" language in the sale order could not be used to enjoin creditors that were not on notice of the sale.

The holding in *Motors Liquidation* is instructive. The Second Circuit *did not* unwind the sale of General Motors assets. The Second Circuit did find that the sale order could not enjoin the creditors without notice. *In the Matter of Motors Liquidation Company*, 829 F.3d at 170. *Motor Liquidation* holds that the rights of parties without notice cannot be affected by a court order, not that parties without notice have the right to unwind bankruptcy sales, or that courts should do so on their own accord.

In this case, the sale order did not enjoin Jones. Jones has not and cannot allege the loss of a cognizable property interest in the claims against him. Jones' claims against Garbatini are not subject to discharge. In sum, Jones has failed to allege a sufficient interest in property to trigger due process scrutiny. Jones' rights against Garbatini are exactly the same today as they were on the day that Garbatini filed for relief under the bankruptcy code. In such circumstances,

there is no deprivation of life, liberty or property that should cause this Court to engage in an analysis of the U.S. Constitution.

The other "due process" authority cited by Jones in the Rule 60 Motion confirms that Jones has no procedural due process claim. *In re Ruehle,* 307 .B.R. 28 (6th Cir. BAP 2004) involved a creditors whose claims were discharged by a Chapter 13 plan. Jones' claim was not discharged by the Trustee's sale and Jones' claims, if any, will never be discharged. *In re Burd,* 202 B.R. 590 (Bankr. N.D.Ohio 1996), discussed the appropriate process for a sale free and clear and discussed due process generically. *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 109 (6th Cir. 1995) is the archetypical case of a default judgment entering against a party without notice. A review of *Kohut v. United Healthcare Ins. Co. (in re LSC Liquidation, Inc.),* 699 F. App'x 503, 508 (6th Cir. 2017) reveals that the case never uses the term "due process" and does not discuss reopening proceedings on due process grounds.[8]

In sum, Jones has not been deprived of any interest in property, any claim against Garbatini, or any other interest in property that triggers scrutiny of these bankruptcy proceedings under the due process clause of the Fifth Amendment to the United States Constitution.

D. *The Sale Price Pays All Claim-Filing Creditors in Full and Is Not Grossly Inadequate*.

Jones argues that a subsequent offer "may require" that a sale be vacated if the amount of the offer shows that the sale price was "grossly inadequate." *Rule 60 Motion,* at p. 13. Jones

---

[8] Jones cites three cases in which sales were set aside due to lack of notice. *Rule 60 Motion,* at p. 13. All of those cases were decided under the Bankruptcy Act. *Wolverton v. Shell Oil Co.*, 442 F.2d 666, 668 (9th Cir. 1971), involved a clandestine sale in which no notice whatsoever was given (twice). *Mason v. Ashback,* 383 F.2d 779, 780 (10th Cir. 1967) is also a case in which the notice requirements of the Bankruptcy Act were ignored. *In re Insulation & Acoustical Specialties, Inc*., 311 F.Supp. 1209 (D.C.Mo. 1969) involved a sale without proper notice of a $50,000 life insurance policy for $1,723.60 when the person insured had a terminal illness that was not disclosed to the referee. Thus, in all of these cases it is assumed that notice was not given to creditors whose claims were discharged under the Bankruptcy Act.

14

makes this argument claiming that he will bid "well in excess of what they were sold back to the Debtor." *Rule 60 Motion,* at p. 9 (emphasis in the original). Jones provides no further discussion of what he might bid to avoid detailing the enormous value of the claims against him.

The sale price was sufficient to pay all creditors in full. 11 U.S.C. § 726(a) and Fed. R. Bankr. P. 3002(a) determine the parties that receive distributions from the bankruptcy estate. At the time of the sale to Garbatini, the Trustee received sufficient funds to pay all filed claims against the bankruptcy estate in full and with interest and to return a surplus to the debtor. The sale occurred twenty-three months after the deadline to file proofs of claim and twenty-two months after the deadline for the Trustee to file proofs of claim. Based on the claims register on the claims bar date and the claims register on the date of the sale, if Garbatini paid $10 million for her claims against Jones, the amount of money paid to creditors would not change by a single penny (nor would the Trustee's commission).[9] Only the surplus returned to Garbatini would increase.

If the claims against Jones have value, then Jones argues disingenuously that he is a creditor of the bankruptcy estate because all of his "claims" are predicated on the claims against him failing. Thus, Jones engages in nonsensical circular logic. If he loses *Lafferty v. Jones,* Jones can have no claim against the estate. If Jones wins on all counts in *Lafferty v. Jones,* the claims sold to Garbatini had no merit. Jones thus argues, and would have this Court believe, that he wants to pay for claims that have no merit. This is of course not true. Jones knows and fears that the claims against him have significant value and he hopes to purchase the claims to thwart them. Jones does not engage in this process to pay creditors. Assuming Jones told the Superior Court the truth in his Special Motion to Dismiss, Jones does not come to this Court to recover for

---

[9] At some point in the near future (if not already) the passage of time will increase the interest charges against the bankruptcy estate and consume the surplus available to Garbatini.

himself. (Jones stated he "had no desire to collect money for the parents of Sandy Hook victims.")

Jones filed his Rule 60 Motion for the purpose of interfering with the administration of the Garbatini bankruptcy case. The Trustee would have paid all claim-filing creditors already, or in the very near future, had Jones not filed his Rule 60 Motion. Jones filed the Rule 60 Motion to save himself from a potentially massive judgment by having this Court unwittingly protect him from the claims of Garbatini and the other Sandy Hook victims. Jones' effort is not to prevent an unfair sale. It is an effort to create an unfair sale. Jones does not have claim against Garbatini and he did not file his Rule 60 Motion to obtain payment from the bankruptcy estate or to further some bankruptcy purpose. Such an effort would be nonsensical because any money paid to Jones would *come from him* – either as the purchase price for the claims, or as the proceeds of a judgment entered against him.

Jones' desire to interfere with the administration of the Garbatini bankruptcy case does not constitute "exceptional circumstances" to grant relief under Rule 60(b)(6).

*E. The Rule 60 Balancing of Justice and Finality Tips Decisively in Favor of Finality.*

As noted above, "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Tapper*, 833 F.3d at 170. In the bankruptcy context, the finality of the sale process is paramount to any interest Jones might claim.

The United States Bankruptcy Code furthers the policy of finality in bankruptcy sales and assists the bankruptcy court to secure the best price for the debtor's assets. *In re Motors Liquidation Co.*, 428 B.R. 43, 53 (S.D.N.Y. 2010) citing *Contratian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 248–49 (2d Cir.2010) and *United States v.*

*Salerno*, 932 F.2d 117, 123 (2d Cir.1991). *See also* 11 U.S.C. § 363(m). Jones' position is antithetical to both of these policies.

If Jones' argument is accepted, bankruptcy sales might always be reopened if an unscheduled creditor – even one with a dubious, disputed, contingent claim – argues that it did not know about the sale. The trustee might provide notice to the entire list of creditors, appearing parties, and known parties in interest, but this will no longer suffice. The rule for which Jones argues is that trustees must provide notice to unknown parties in order to prevent a party claiming to be a "creditor" from having the sale set aside. The result of conducting sales in this fashion is both a dramatic increase in the costs of sale (notice by publication will be required) and a reduction in sales prices, because the buyer will never be certain that it received indefeasible title at the bankruptcy sale.

These burdens cannot be permitted in an effort to protect a party whose claim against the debtor is not discharged if that party has no interest in the property sold. Justice does not require taking actions contrary to the policies of the U.S. Bankruptcy Code to protect parties whose rights pass unaffected through the bankruptcy process.

WHEREFORE, Richard M. Coan, Trustee requests that Jones' Rule 60 Motion be denied, that his objection thereto be sustained, and for such other and further relief as this Court deems just.

                              RICHARD M. COAN, TRUSTEE

                              <u>By /s/ Richard M. Coan</u>
                              Richard M. Coan (ct06376)
                              Coan, Lewendon, Gulliver & Miltenberger, LLC
                              495 Orange St.
                              New Haven, CT  06511
                              (203) 624-4756
                              (203) 865-3673 Facsimile
                              rcoan@coanlewendon.com

                              <u>By /s/ Timothy D.  Miltenberger</u>
                              Timothy D. Miltenberger (ct08874)
                              Coan, Lewendon, Gulliver & Miltenberger, LLC
                              495 Orange St.
                              New Haven, CT  06511
                              (203) 624-4756
                              (203) 865-3673 Facsimile
                              tmiltenberger@coanlewendon.com
                              <u>(His Attorneys, Application Pending)</u>

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 8, 2021 a copy of the foregoing was filed electronically and will be sent by email to all parties by operation of the Court's electronic filing system to all appearing parties. Parties may access this filing through the Court's CM/ECF System.

                                              /s/ Timothy D. Miltenberger
                                              Timothy D.  Miltenberger