## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ERICA L. ASH | ) | |
| | ) | CASE NO.     18-51587 (JAM) |
| a/k/a ERICA L. GARBATINI | ) | |
| a/k/a ERICA LAFFERTY | ) | |
| a/k/a ERICA SMEGIELSKI, | ) | CHAPTER     7 |
| | ) | |
| Debtor | ) | |
| | ) | |

## DEBTOR'S MOTION TO DISMISS CHAPTER 7 CASE
## UNDER SECTION 707(a) OF THE BANKRUPTCY CODE

### I.    INTRODUCTION

This case presents a unique and dire situation. Erica L. Ash ("Ms. Ash" or the "Debtor") has an aggressive form of brain cancer that has spread throughout her intestines. She is facing imminent death unless she can procure additional funding to pay for experimental cancer treatment that her health insurance does not cover. Ms. Ash seeks immediate dismissal of her Chapter 7 bankruptcy case so that she may procure litigation funding (which will require dismissal of this case or abandonment of the State Court Claims (as defined herein) back to the Debtor) to pay for this experimental treatment. Her next treatment begins on December 10, 2023, and by at least December 5, 2023, she will need between $40,000.00 and $45,000.00 to pay for the uncovered prescription costs. Failure to begin receiving this treatment by December 10, 2023, will put Ms. Ash's continued treatment at risk and will likely threaten her ability to survive this disease.

For these reasons, Ms. Ash hereby moves this Court for an order dismissing her bankruptcy case pursuant to 11 U.S.C. § 707(a) in the manner described herein (the "Motion"), so she may obtain the necessary funding to allow her to pay out-of-pocket for uncovered life-saving cancer medications. To prevent injustice to her creditors, Ms. Ash is proposing to pay (i) all of her

creditors who have filed proofs of claim with a limited exception[1] and (ii) all creditors listed on her Statements and Schedules (as defined herein) who were listed as having undisputed, noncontingent, and liquidated claims, but did not file a proof of claim, and have not been paid to date. Moreover, Ms. Ash is proposing to pay these creditors' claims plus the average federal judgment rate of interest in effect the week prior to the Petition Date[2] (as defined herein) from the Petition Date through October 31, 2023. Dismissal of the Debtor's bankruptcy case on the foregoing terms, and as more fully described herein, will not result in prejudice to any single creditor and, in fact, is in the best interests of creditors because it will expedite payment to them and remove any risk of non-payment.

In support of the Motion, Ms. Ash submits a declaration (the "<u>Ash Declaration</u>"), which is annexed hereto as **<u>Exhibit A</u>**, and further states as follows:

## II.    BACKGROUND

### A.    The State Court Action

1.    On May 23, 2018, the Debtor, among others, filed a lawsuit against Alex Emric Jones ("<u>Jones</u>"), Prison Planet TV, LLC ("<u>Prison Planet</u>"), Infowars Health, LLC ("<u>Infowars Health</u>"), Free Speech Systems, LLC ("<u>Free Speech Systems</u>"), and Infowars, LLC ("<u>Infowars</u>", collectively with Jones, Prison Planet, Infowars Health, and Free Speech Systems, the "<u>Jones Entities</u>"), among others, in Connecticut Superior Court alleging damages stemming from statements by Jones and other defendants that the mass shooting on December 14, 2012, which

---

[1] As described in greater detail below, the Debtor proposes not to pay any of the Jones Entities (as defined herein) as part of the dismissal of her case. While the Jones Entities' claims are wholly without merit, it will simply take too long to litigate these claims. Accordingly, the Debtor agrees to expressly exclude the claims of the Jones Entities from her discharge under 111 U.S.C. § 727 in the order granting this motion.

[2] The Debtor selected the average federal judgment rate of interest in effect the week prior to the Petition Date based on 28 U.S.C. § 1961 which provides that post judgment interest shall be allowed on a money judgment calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, for the calendar week preceding the date of the judgment.

occurred at Sandy Hook Elementary School in Newtown, Connecticut and left twenty children and six educators dead, including the Debtor's mother, was staged and never occurred (the "State Court Action"). (*Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.).)[3] The State Court Action included counts against the Jones Entities, among others, for invasion of privacy by false light, defamation, intentional infliction of emotional distress, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA").

2.      As part of the State Court Action, in or about April 2021, some of the plaintiffs reached a potential settlement with some of the non-Jones Entities defendants pursuant to which funds were recovered, including the agreed upon share of the Debtor's portion of those funds (the "Superior Court Funds").   Upon information and belief, the Connecticut Superior Court is continuing to hold the Superior Court Funds.   (*See generally Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.), Docket Entry No. 317.00 and 318.00.)

3.      On November 15, 2021, the Connecticut Superior Court entered a default against the Jones Entities due to repeated violations of the court's discovery orders and the court ordered that the case would proceed as a hearing in damages. (*See Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.), Docket Entry No. 574.00.)[4]

4.      On October 12, 2022, as part of the hearing in damages, a jury awarded the Debtor $18,000,000.00 for past and future defamation/slander damages and $58,000,000.00 for past and

---

[3] In December 2018 and January 2019, two substantively similar complaints, captioned *Sherlach, et al. v. Jones, et al.* bearing case number UWY-CV-18-6046437-S and *Sherlach, et al. v. Jones et al.* and bearing case number UWY-CV-18-6046438-S were consolidated with the State Court Action.

[4] Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of the docket of the State Court Action. *See In re Ranciato*, 638 B.R. 275, 281 n. 3 (Bankr. D. Conn. 2022), *reconsideration denied*, 2022 WL 877198 (Bankr. D. Conn. Mar. 24, 2022) (taking judicial notice of state court docket pursuant to Fed. R. Evid. 201).

future emotional distress damages against Jones and Free Speech Systems.[5] (*See Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.), Docket Entry No. 1010.00.)

5.     On November 10, 2022, the Connecticut Superior Court entered its memorandum of decision on punitive damages in which it granted each of the plaintiffs, including the Debtor, an award of $10,000,000.00 in CUTPA punitive damages. In addition, the court also awarded common law punitive damages for attorneys' fees and costs where the Debtor's share is $25,330,000.00 for attorneys' fees and $99,303.73 in costs. The court also found that the defendants engaged in intentional and malicious conduct resulting in harm to the plaintiffs. (*See Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.)*,* Docket Entry No. 1026.00.)

6.     On December 22, 2022, the Connecticut Superior Court issued the *Judgment After Completed Trial to the Court for the Plaintiff(s)* and the *Judgment on Verdict for Plaintiff.* (*Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.)*,* Docket Entry Nos. 1044.00 and 1045.00.)

7.     On December 29, 2023, Jones and Free Speech Systems appealed the judgment of the Connecticut Superior Court in connection with the State Court Action. (*See Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.), Docket Entry No. 1050.00; *see also Lafferty et al. v. Jones at al.,* Case No. AC-46131 (Conn. App.))

8.     On March 29, 2023, the plaintiffs filed a Motion for Rectification to clarify the amount of the judgment in favor of the Trustee as totaling $111,429,303.73, which was granted on

---

[5] Although there were several additional defendants when the case was commenced, as of the damages trial and the subsequent verdict, the only remaining defendants are Jones and Free Speech Systems.

March 31, 2023. (*See Lafferty, Erica, et al. v. Jones, Alex Emric, et al.*, Docket No. UWY-CV18-6046436-S (Conn. Super. Ct.), Docket Entry Nos. 1068.50 and 1069.00.)

9.      The appeal of the State Court Action remains pending without a final decision.  On June 2, 2023, Jones and Free Speech Systems filed their appellants' brief.  On October 10, 2023, the plaintiffs in the State Court Action filed their appellees' brief.  The reply brief of Jones and Free Speech Systems is currently due on November 13, 2023.  (*See generally Lafferty et al. v. Jones at al.,* Case No. AC-46131 (Conn. App.))

**B.      The Debtor's Chapter 7 Bankruptcy Case**

10.      On December 5, 2018 (the "Petition Date"), the Debtor filed a petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). (ECF No. 1.)

11.      On December 5, 2018, Richard M. Coan was appointed the Chapter 7 bankruptcy trustee (the "Trustee") of the Debtor's bankruptcy estate. (ECF No. 3.)

12.      On January 2, 2019, the Debtor's Section 341 meeting of creditors was held, the Debtor and her attorney appeared, the Debtor provided testimony, and such meeting was closed. (*See* January 2, 2019, docket text on Case No. 18-51587.)

13.      On January 11, 2019, the Trustee filed the Trustee's Report of Assets in which he states, in relevant part, "it appears that [the Trustee] will recover assets. It is now appropriate to set a claims bar date . . . ." (ECF No. 10.)

14.      Also on January 11, 2019, the Clerk of the United States Bankruptcy Court for the District of Connecticut issued a *Notice of Need to File Proof of Claim Due to Recovery of Assets* and set the proof of claim bar date in the Debtor's case as April 11, 2019. (ECF No. 11.)

15.      With her petition, the Debtor filed her bankruptcy statements and schedules (the "Statements and Schedules") that listed $25,862.00 in unsecured, undisputed, noncontingent, and

liquidated claims, where the creditor did not file a proof of claim. (*See* ECF No. 1.) These claims

are as follows:

| Creditor Name[6] | Claim Amount |
|---|---|
| AMG Watertown Office | $60.00 |
| AT&T | $50.00 |
| Credit First National Association | $1,123.00 |
| Credit One Bank | $926.00 |
| Fingerhut | $752.00 |
| Kay Jewelers | $4,386.00 |
| Kohl's | $459.00 |
| Optimum | $50.00 |
| PMH Alliance Medical Group | $150.00 |
| Santander Consumer | $6,491.00 |
| Walmart | $354.00 |
| Waterbury Ct Teachers | $2,398.00 |
| Waterbury CT Teachers FCU | $8,663.00 |
| **TOTAL** | **$25,862.00** |

16.    To date, the Debtor has not paid any of the unsecured, undisputed, noncontingent,

and liquidated claims where the creditor did not file a proof of claim. (Ash Declaration ¶4.)

17.    The Debtor's Statements and Schedules also listed $177,050.09 in secured claims.

These claims are as follows:

| Creditor Name[7] | Claim Amount |
|---|---|
| 401k | $5,963.01 |
| Carmax | $5,000.00 |
| Prime Lending | $166,028.00 |
| Watertown Fire District | $59.08 |
| **TOTAL** | **$177,050.09** |

18.    The Debtor has repaid the amounts due and owing on her 401k in the amount of

$5,963.01. (*See* Ash Declaration ¶5.)

---

[6] *See* ECF No. 1, Schedule E/F, pp. 20-27.  This chart omits any claims from the Statements and Schedules where such creditor subsequently filed a proof of claim.
[7] *See* ECF No. 1, Schedule D, pp. 18-19.

19.     In addition, on or about June 14, 2022, the Debtor sold the real property located at 33 Hart Street, Watertown, Connecticut 06795. (*See* Ash Declaration ¶6.) As part of the closing of the sale of this real property, the secured debts of Prime Lending and the Watertown Fire District were paid off in full. (*See* Ash Declaration ¶6; Ex. 1.) A true and correct copy of the closing disclosure of that sale transaction is annexed as **Exhibit 1** to the Ash Declaration.  Unfortunately, the Debtor did not seek to have the Trustee abandon the real property and, at the closing of the sale, the Debtor received a portion of her equity in the real property in the amount $58,219.31.[8] (*See* Ash Declaration ¶6.)

20.     The only remaining debt listed as secured is the debt to Carmax in the total amount of $5,000.00, which in reality is an unsecured debt because there is no collateral securing it since the motor vehicle that had previously secured the debt was completely destroyed. (Ash Declaration ¶7.)

21.     On January 21, 2019, the Debtor filed amended Schedule A/B and Schedule C. Pursuant to these amended schedules, the Debtor listed the pending State Court Action with an

---

[8] Although the Trustee did not abandon the real property, the Trustee can do so, if compelled, on a *nunc pro tunc* basis. *See e.g. In re Taylor*, No. 15-31208 (AMN), 2019 WL 4281896, at *8 (Bankr. D. Conn. Sept. 10, 2019) (explaining that in balancing "the equities of all the parties to determine whether to apply the *nunc pro tunc* doctrine to the Trustee's abandonment, the Court's primary concern is with the bankruptcy estate, its creditors, and the Trustee's administration of the estate" and finding that "application of the *nunc pro tunc* doctrine to the Trustee's abandonment has little to no effect on the bankruptcy estate. . .").  Here, on balance, it would be in all parties' interests for the Trustee to abandon the real property on a *nunc pro tunc* basis given that the Debtor intends to now pay all of her creditors filing a proof of claim (except the Jones Entities), all creditors listed on the Statements and Schedules with an undisputed, noncontingent, liquidated claim, and all remaining "secured" creditors.  In addition, the Debtor could amend her Statements and Schedules to claim the Connecticut homestead exemption, Conn. Gen. Stat. § 52-352b(21). In July 2023, the Connecticut Supreme Court held that the $250,000.00 increased homestead exemption did not have retroactive application under Connecticut's statutory construction rules, but did apply in "bankruptcy proceedings filed **on or after** the effective date of the act to debts that accrued prior to that date." *In re Cole*, 347 Conn. 284, 310 (2023) (emphasis added).  The increased homestead exemption, Conn. Gen. Stat. § 52-352b(21), did not become effective until October 1, 2021.  Because the Debtor's petition was filed in 2018, long before the increased homestead exemption became effective, she is only entitled to the $75,000.00 homestead exemption provided in the prior version of the statute. *See* Conn. Gen. Stat. § 52-352b(t) (2021).  Regardless, the $75,000.00 homestead exemption would cover all sums received from the sale of the real property, and that amount would be returned to the Debtor upon making such election.  It is the Debtor's understanding, through communications with counsel, that if the Debtor had claimed the state exemption in her original Schedules, at some point, the Trustee would have abandoned the real property. Accordingly, with the Debtor now claiming the state exemptions, there is no change in the ultimate outcome.

exemption. (ECF No. 13, p. 7.)  While preparing this Motion, the undersigned counsel discovered that these amended schedules were filled out incorrectly. The Debtor only intended to amend Schedules A/B and C to disclose the pending litigation against Jones, which had been inadvertently overlooked.  She did not intend for these amended schedules to remove prior disclosures made about her other property initially disclosed on Schedule A/B and Schedule C.[9] (Ash Declaration ¶ 13.)

22.    On February 11, 2021, the Trustee filed a *Notice of Sale of Property of Estate and Opportunity for Objections Thereto* pursuant to which the Trustee provided notice and an opportunity to object to the proposed sale to the Debtor of the bankruptcy estate's interests in the State Court Action (the "State Court Action Claims"). Specifically, the Debtor proposed to purchase the State Court Action Claims in exchange for payment of the Superior Court Funds in the amount of $37,000.00 to her bankruptcy estate.  (ECF No. 27.)

23.    On March 6, 2019, the Court entered an order granting a discharge to the Debtor under 11 U.S.C. § 727. (ECF No. 15.)

24.    On April 19, 2021, the Trustee filed *Trustee's Report of Sale* pursuant to which the Trustee stated that, on April 19, 2021, he received the Superior Court Funds. (ECF No. 35.)

**C.    The Jones' Entities' Involvement with the Debtor's Bankruptcy Case**

25.    On May 10, 2021, the Jones Entities filed the *Motion for Order for Relief from, or to Vacate or Void, Chapter 7 Trustee's Sale of Litigation Claims Back to the Debtor, and Memorandum in Support Thereof* seeking to void the sale of the State Court Action Claims, (ECF

---

[9] At this point, there is not sufficient time to amend the incorrectly filed amended Schedule A/B and Schedule C and the Debtor would request that the Court to take judicial notice of the Debtor's previously correctly filed Statements and Schedules and her sworn statements in the Ash Declaration and only take into account the disclosure of the State Court Action with respect to the amended Schedules A/B and Schedule C while leaving all other information in the Debtor's originally filed Statements and Schedules unchanged, except as modified by ECF Nos. 96 and 97. (*see* ECF No. 13.).

No. 36), which the Court granted in part on September 13, 2021 (the "Order for Relief from Judgment"), (ECF No. 134). The Order for Relief from Judgment required the Trustee to return the proceeds of the sale of the State Court Action Claims to the Connecticut Superior Court in connection with the State Court Action within twenty-one (21) days of the date of the Order for Relief from Judgment. (ECF No. 134.) Upon information and belief, the Superior Court Funds remain with the Connecticut Superior Court.

26.     On May 25, 2021, the Jones Entities filed the *Motion to File Late Proof of Claim and Memorandum in Support Thereof* seeking to file a proof of claim in the matter after the proof of claim bar date given an alleged lack of notice of the Debtor's bankruptcy case (ECF No. 48), as amended by the *Amended Motion to File Late Proof of Claim and Memorandum in Support* on May 28, 2021 (the "Amended Motion to File Late Claim"). (ECF No. 51.)

27.     On July 12, 2021, the Debtor filed the corrected amendments to her Statements and Schedules pursuant to which she listed the State Court Action on her Statement of Financial Affairs for Individuals Filing for Bankruptcy that previously had been overlooked and amended Schedule E/F: Creditors Who Have Unsecured Claims to list each of the Jones Entities and other entities, which claims were disputed, and individuals related to the State Court Action (the "Amended Statements and Schedules"). (ECF Nos. 96 and 97.)

28.     The Amended Statements and Schedules rendered the *Amended Motion to File Late Claim* moot, (*see d*ocket text at ECF No. 99), and on July 14, 2021, the Court entered an *Order Setting Bankruptcy Case Deadlines for Added Creditors* (ECF No. 102). This notice extended the deadline for the Jones Entities to file (i) a proof of claim until September 27, 2021, (ii) a motion under §§ 727(a)(8) or (a)(9) objecting to the Debtor's discharge or a complaint objecting to the Debtor's discharge under § 727, and/or a complaint to determine the dischargeability of a debt

under § 523(c) until September 15, 2021, and (iii) an objection to the Debtor's list of claimed exemptions until August 16, 2021. (ECF No. 102.)

29.     On August 16, 2021, the Jones Entities filed an *Objection to Claimed Exemption* (ECF No. 116), which the Court stayed until a final judgment is rendered in connection with the State Court Action (ECF No. 142).

30.     On September 27, 2021, each of the Jones Entities filed a proof of claim for $500,000.00. (*See* Proof of Claim Nos. 12-16.) Attached to each of the Jones Entities' proofs of claim forms is a document titled *Creditors Alex E. Jones, Free Speech Systems, LLC, Infowars Health, LLC, Infowars, LLC, and Prison Planet TV, LLC's Memorandum in Support of Proof of Claim*, which alleges that the Jones Entities collectively, not individually, have a claim against the Debtor for at least $500,000.00. (*See generally* Proof of Claim Nos. 12 – 16.)

**D.     The Jones Entities' Adversary Proceeding Against the Debtor**

31.     On September 13, 2021, the Jones Entities filed an adversary proceeding against the Debtor seeking a determination that the debt in the amount of at least $500,000.00 allegedly owed to the Jones Entities and stemming from the Debtor's initiation of the State Court Action was willful, malicious, and vexatious and should be found to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). (Adv. Pro. No. 21-05009, ECF No. 1.)

32.     On October 8, 2021, the Debtor filed the *Motion to Stay Adversary Proceeding and Memorandum in Support Thereof* (Adv. Pro. No. 21-05009, ECF No. 7), which the Court granted on November 8, 2021 (Adv. Pro. No. 21-05009, ECF No. 12).

33.     On April 8, 2022, counsel for the Jones Entities moved to withdraw as attorney in the Debtor's bankruptcy case (ECF No. 155) and in the adversary proceeding against the Debtor (Adv. Pro. No. 21-05009, ECF No.14), which the Court granted on April 13, 2022 (*see* ECF No.

156 and Adv. Pro. No. 21-05009, ECF No. 15). To date, new counsel for the Jones Entities have not appeared in the Debtor's bankruptcy case or the adversary proceeding and the corporate entities remain unrepresented.

34.    On March 2, 2023, the Court issued a *Notice of Proposed Dismissal of Adversary Proceeding* in the adversary proceeding, which outlined that no parties had taken any action for the last six (6) months and unless action was taken within twenty-one (21) days or a satisfactory explanation of why the adversary proceeding should not be dismissed, then the adversary proceeding would be dismissed. (Adv. Pro. No. 21-05009, ECF No. 17.)

35.    To date, none of the Jones Entities have taken any action or filed a response to the *Notice of Proposed Dismissal of Adversary Proceeding*. The Adversary Proceeding remains pending. (*See generally* Adv. Pro. No. 21-05009.)

**E.    Jones' and Free Speech Systems' Texas Bankruptcy Cases and Related Adversary Proceedings**

36.    On December 2, 2022, Jones filed an individual petition under Chapter 11 of Title 11 of the Bankruptcy Code. (*See* Case No. 22-33553 (S.D. Tex. Bankr.).)

37.    As part of Jones' bankruptcy case, on April 4, 2023, the Trustee filed a proof of claim in the amount of $111,429,303.73, representing the amounts due and owing to the Debtor as a result of the judgment rendered in the State Court Action.  (*See* Claim No. 6-1, Case No. 22-33553 (S.D. Tex. Bankr.).)  In addition, on April 5, 2023, the Debtor filed a proof of claim in the amount of $111,429,303.73, representing the amounts due and owing to the Debtor as a result of the judgment rendered in the State Court Action.  (*See* Claim No. 11-1, Case No. 22-33553 (S.D. Tex. Bankr.).)

38.    On July 29, 2022, Free Speech Systems filed a petition under Chapter 11 Subchapter V of Title 11 of the bankruptcy Code (*See* Case No. 22-60043 (S.D. Tex. Bankr.).)

39.     As part of Free Speech Systems' bankruptcy case, on October 7, 2022, the Trustee filed a proof of claim in an unliquidated amount, which represented the amounts due and owing to the Debtor as a result of the judgment rendered in the State Court Action.  (*See* Claim No. 27-1, Case No. 22-60043 (S.D. Tex. Bankr.).)  In addition, on October 7, 2022, the Debtor also filed a proof of claim in an unliquidated amount, which represented the amounts due and owing to the Debtor as a result of the judgment rendered in the State Court Action.  (*See* Claim No. 19-1, Case No. 22-60043 (S.D. Tex. Bankr.).)

40.     Related to Jones' and Free Speech Systems' bankruptcy cases, on March 10, 2023, plaintiffs from the State Court Action, among others, filed two adversary proceedings against Jones and Free Speech Systems alleging that the debts owed to them were nondischargeable under 11 U.S.C. § 523(a)(6) and sought a declaratory judgment. (*See* Adv. Pro. No. 23-03035 *Heslin et al. v. Jones et al.* (S.D. Tex. Bankr.), ECF No. 1 and Adv. Pro. No. 23-03037 *Wheeler et al. v. Jones et al.* (S.D. Tex. Bankr.), ECF No. 1.)

41.     As part of the two adversary proceedings brought against Jones and Free Speech Systems, the plaintiffs from the State Court, among others, filed a motion for summary judgment against Jones and Free Speech Systems (Adv. Pro. No. 23-03037 *Wheeler et al. v. Jones et al.* (S.D. Tex. Bankr.), ECF No. 57.)

42.     On October 19, 2023, the Bankruptcy Court (Lopez, J.) issued its decision on the motion for summary judgment holding that summary judgment for non-dischargeability, as to Jones only, (i) is granted as to the $965 million debt for compensatory damages awarded in the State Court Action for defamation and intentional infliction of emotional distress, (ii) is granted on the $150 million debt for CUTPA punitive damages awarded in the State Court Action, and (iii) is denied on the $321.65 million in attorneys' fees and $1,489,555.94 in costs awarded as

common law punitive damages. (*See* Adv. Pro. No. 23-03037 *Wheeler et al. v. Jones et al.* (S.D. Tex. Bankr.), ECF No. 76.)

### F.    The Debtor's Cancer Diagnosis and Treatment

43.    In or about April 2023, at the age of thirty-seven (37), the Debtor was diagnosed with Stage II primary orbital lymphoma (that has now spread and is considered brain cancer) and Stage 0 cancer in her lymph nodes.  More recently, just after her thirty-eighth (38th) birthday, the Debtor learned that her cancer had spread to her gastrointestinal tract. Given the nature of the Debtor's cancer diagnosis, certain lifesaving cancer treatments are considered "experimental" by her health insurance and are, therefore, not covered by said insurance, which leaves the Debtor with no choice other than to pay such costs out-of-pocket. By way of example, on a daily basis, the Debtor takes an oral chemotherapy medication called Chlorambucil to help shrink cancerous tumors that costs between $40,000.00 and $45,000.00 per month, which the Debtor's health insurance does not cover. This example is representative of a single uncovered prescription for the Debtor and does not account for the costs of any other medications that may be uncovered for an existing diagnosis or for an additional diagnosis. (*See* Ash Declaration ¶8.)

44.    Although the Debtor has obtained certain grants and donations to cover certain payments for her non-covered medications, she is still paying several thousand dollars out-of-pocket every month for lifesaving medications. (*See* Ash Declaration ¶9.)

45.    At this point, the Debtor will be able to pay her out-of-pocket medication expenses through December 5, 2023; however, she will be unable to pay for the following rounds of medication that she needs to begin no later than December 10, 2023, and again in early March 2024. (*See* Ash Declaration ¶10.)

46.     To ensure that the Debtor has sufficient funds to pay for the next two rounds of her cancer medication that starts on or about December 10, 2023, and in or about March 2024, she has determined that she has no option other than to take out a loan secured by her State Court Action Claims or sell such claims. At this point, the Debtor is seeking litigation funding relating to the State Court Action and/or proposals to buy the claims outright, so she can cover her out-of-pocket medication costs in the short term. (*See* Ash Declaration ¶11.)  Whether the Debtor seeks to sell the State Court Action Claims or use them as collateral for a loan, she has been informed by potential counterparties that she needs to have this case dismissed and the State Court Action Claims abandoned back to her. (*See* Ash Declaration ¶12.)

### G.    Debtor's Proposed Terms of Dismissal

47.     As part of the proposed dismissal of the Debtor's bankruptcy case, Ms. Ash is proposing to pay all unsecured creditors listed on her Statements and Schedules, who have not filed a proof of claim and are listed as having an undisputed, noncontingent, and liquidated claim in the amount listed on such documents, plus the average federal judgment rate of interest in effect the week prior to the Petition Date[10] for the period of the Petition Date through October 31, 2023. The proposed payments to this subset of unsecured creditors totals $29,290.19, as follows:

| Creditor Name[11] | Interest | Claim Amount |
|---|---|---|
| AMG Watertown Office | $7.95 | $60.00 |
| AT&T | $6.63 | $50.00 |
| Credit First National Association | $148.86 | $1,123.00 |
| Credit One Bank | $122.75 | $926.00 |
| Fingerhut | $99.68 | $752.00 |
| Kay Jewelers | $581.40 | $4,386.00 |
| Kohl's | $60.84 | $459.00 |
| Optimum | $6.63 | $50.00 |

---

[10] 28 U.S.C. § 1961 provides that interest shall be allowed on any money judgment in a civil case where interest is computed daily to the date of payment and compounded annually. During the week of November 25, 2018, the average federal judgment rate was 2.70%. (*Historical Post Judgment Interest Rates*, p. 5 *https://www.casb.uscourts.gov/sites/casb/files/historic_rates.pdf* (last accessed 10/30/2023).)

[11] *See* ECF No. 1, Schedule E/F, pp. 20-27.

| | | |
|---|---|---|
| PMH Alliance Medical Group | $19.88 | $150.00 |
| Santander Consumer | $860.40 | $6,491.00 |
| Walmart | $46.93 | $354.00 |
| Waterbury Ct Teachers | $317.88 | $2,398.00 |
| Waterbury CT Teachers FCU | $1,148.36 | $8,663.00 |
| **TOTALS** | **$3,428.19** | **$25,862.00** |

48.     In addition, the Debtor is proposing to pay all unsecured creditors, who have filed proofs of claim in the amount listed in such documents, plus the average federal judgment rate of interest in effect the week prior to the Petition Date for the period of the Petition Date through October 31, 2023. The proposed payment to this subset of unsecured creditors totals $34,435.98, as follows:

| Creditor Name[12] | Interest | Claim Amount |
|---|---|---|
| Discover Bank | $1,163.70 | $8,778.76 |
| TD Bank, N.A. | $525.32 | $3,962.95 |
| Synchrony Bank | $162.03 | $1,222.35 |
| PYOD, LLC Resurgent Capital Services | $130.19 | $982.10 |
| Capital One, N.A. | $67.10 | $506.19 |
| Waterbury Hospital | $33.14 | $250.00 |
| American Express National Bank | $1,279.69 | $9,653.73 |
| Quantum3 Group LLC as agent for Comenity Bank | $187.34 | $1,413.27 |
| Quantum3 Group LLC as agent for Bluestem and SCUSA | $102.05 | $769.85 |
| PYOD, LLC Resurgent Capital Services | $58.06 | $437.97 |
| Citibank, N.A. | $321.89 | $2,428.30 |
| **TOTALS** | **$4,030.51** | **$30,405.47** |

49.     To further facilitate dismissal of her bankruptcy case, the Debtor is proposing to pay Carmax $5,000.00 for a debt owing on a car that is now destroyed.  The Debtor proposes to pay this claim in the amount of $5,000.00, plus the average federal judgment interest rate in effect the week before the Petition Date for the period of the Petition Date through October 31, 2023, in the total amount of $5,659.36.

---

[12] *See* Proof of Claim Nos. 1 – 12.

50.     While the Debtor rejects the merit and validity of the Jones Entities' claims (*see generally* Claim Nos. 12–16), a position fully supported by the judgment in the State Court Action, the Debtor simply does not have the time to litigate a claim objection. Thus, to ensure that dismissal of the Debtor's bankruptcy case is fair to _all_ creditors, including the Jones Entities, the Debtor proposes that any order dismissing her bankruptcy case exclude from her discharge the claims of the Jones Entities.  By carving the Jones Entities out of any discharge order, they will be able to continue to pursue such claims against the Debtor while the State Court Action remains pending on appeal without any impact from the dismissal of the Debtor's bankruptcy case.

51.     To pay for the foregoing claims (except the Jones Entities' claims), plus the federal judgment rate of interest in effect the week prior to the Petition Date from the Petition Date through October 31, 2023, the Debtor is proposing to use the Superior Court Funds and to use the proceeds of the litigation funding or sale of the State Court Action Claims to pay the balance.

52.     At this point, the Debtor with the assistance of counsel, is working to obtain litigation funding and/or offers to buy the State Court Action Claims.  While the Debtor has not reached any terms (conditioned on dismissal of this case) with a counterparty, the Debtor is hopeful that by the time this motion is heard she will have a term sheet in hand.  Upon finalization of the terms of any prospective arrangement, the Debtor will file a supplemental declaration to update the Court concerning the status of such arrangement.[13]

## III.     LEGAL STANDARD AND ARGUMENT

### A.     The Debtor's Chapter 7 Case Must Be Dismissed Under 11 U.S.C. § 707(a).

53.     Section 707(a) of the Bankruptcy Code governs motions to dismiss a Chapter 7 bankruptcy petition, and provides, in relevant part, as follows:

---

[13] The Debtor reserves the right to file such documents under seal.

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

> (1) unreasonable delay by the debtor that is prejudicial to creditors;

> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and

> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). Under this provision, "the debtor has no absolute right to dismissal of a Chapter 7 case." *Schwartz v. Geltzer (In re Smith)*, 507 F.3d 64, 72 (2d Cir. 2007). "Rather, a debtor seeking dismissal must show 'cause.'" *Id.* Section 707(a) provides three examples of "cause" that would justify dismissal of a Chapter 7 case, but these examples are merely illustrative. *See id.* ("[T]he Bankruptcy Code does not define "cause," and the three examples given in section 707(a) are illustrative, not exclusive."); *In re Atlas Supply Corp.*, 857 F.2d 1061 (5th Cir. 1988) ("Section 707(a) does not . . . provide an exhaustive list of factors to be considered in determining whether good cause exists to dismiss a bankruptcy petition.").

54.    Where, as here, a debtor moves for dismissal, the Second Circuit has held that the determination of whether cause exists begins with the question of "whether dismissal would be in the best interest of all parties in interest." *Schwartz*, 507 F.3d at 72. "The best interest of the debtor lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving him with resources to work out his debts." *Id.* (internal quotation marks omitted). "With regard to creditors, the issue is typically one of prejudice: [C]reditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them. A prejudicial delay

also creates the appearance that such an abusive practice is implicitly condoned by the Code." *Id.* (alteration in original) (internal quotation marks omitted).

55.    "Because the weighing of these factors is guided by equitable considerations, the determination of whether cause exists is committed to the sound discretion of the bankruptcy court." *Id.* at 73 (internal quotation marks omitted); *see* 6 Collier on Bankruptcy ¶ 707.02 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("The court has substantial discretion in ruling on a motion to dismiss under section 707(a), and in exercising that discretion must consider any extenuating circumstances, as well as the interests of the various parties."). Given the flexibility of the "cause" standard, the bankruptcy court may dismiss the case on other unenumerated grounds not specified under Section 707(a) when cause is found to exist. *See* 6 Collier on Bankruptcy ¶ 707.03 (Richard Levin & Henry J. Sommer eds., 16th ed.).

56.    In *Schwartz v. Geltzer*, the Second Circuit held that a Chapter 7 debtor's ability to repay her debts may constitute adequate "cause" for voluntary dismissal. *Schwartz*, 507 F.3d at 75. A frequently cited passage of the legislative history of Section 707(a) had been cited by several bankruptcy courts as supporting the conclusion that ability to pay could not constitute "cause" under this provision because doing so would result in a non-uniform mandatory Chapter 13 in lieu of the remedy of bankruptcy.[14] *Id.* at 73 (collecting cases). Other bankruptcy courts have found that this aspect of the legislative history was not intended to apply to a situation where the debtor, as opposed to a creditor or another party, seeks dismissal. *Id.* The Second Circuit agreed with the latter view, holding that "Congress's fear of enacting a non-uniform mandatory chapter 13 makes

---

[14] The relevant passage from the legislative history is as follows: "[This] section does not contemplate . . . that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy." *Schwartz*, 507 F.3d at 73 (quoting S.Rep. No. 95–989, at 94 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5880; H.R.Rep. No. 95–595, at 380 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6336)).

sense only in the context of an involuntary dismissal." *Id.* (internal quotation marks omitted). The Second Circuit provided that a debtor's ability to repay her debts was not *per se* grounds for dismissal, as that factor is only one aspect of the overall inquiry into whether dismissal would be in the best interest of all parties in interest, *id.*, but the court ultimately weighed that factor heavily in favor of the debtor.

57.    In *Schwartz*, the debtor had a small amount of consumer debt (approximately $14,000) and a single potential asset: a personal injury claim arising from a sledding accident that left her blind in one eye. *Schwartz*, 507 F.3d at 68. If successful, the settlement or judgment value of her personal injury claim likely would have far surpassed the amount of her liabilities. *Id.* The debtor wanted to pursue her personal injury claim with counsel of her choice. However, at the request of the trustee, the bankruptcy court ordered dismissal of the debtor's preferred personal injury counsel,[15] and denied the debtor's motion to dismiss her case under Section 707(a). The bankruptcy court concluded that dismissal of the debtor's case under Section 707(a) was not warranted because it was not in the best interest of the debtor to be represented by her counsel of choice, the parties' failure to agree on the Chapter 7 trustee's appropriate fees and commission would needlessly create additional litigation, and the court was concerned that the debtor had been unfairly manipulated by her personal injury counsel and a second attorney. *Id.* at 74. The district court affirmed the bankruptcy court, finding no abuse of discretion. *Schwartz v. Geltzer (In re Smith)*, No. 04-16320-608, 2006 WL 2505230, at *3 (E.D.N.Y. Aug. 28, 2006), *aff'd in part and rev'd in part*, 507 F.3d 64 (2d Cir. 2007).

---

[15] The bankruptcy court's decision to dismiss the debtor's preferred personal injury counsel was based, in part, on several errors made by this attorney that, at best, demonstrated a lack of understanding of the bankruptcy system and, at worst, showed an intentional effort to circumvent the requirements of the Bankruptcy Code. *Schwartz*, 507 F.3d at 72. Applying an abuse of discretion standard, the Second Circuit affirmed the bankruptcy court's decision to dismiss the debtor's preferred counsel. *Id.*

58.     On the issue of dismissal of the debtor's case under Section 707(a), the Second Circuit reversed both lower courts and held that the bankruptcy court had "exceeded the bounds of its allowable discretion in denying the debtor's motion to dismiss." *Id.* at 67. While acknowledging the bankruptcy court's "desire to protect [the debtor] from the consequences of her own choices," the Second Circuit concluded that "its reasons [were] insufficient to justify denial of [the debtor's] dismissal motion." *Schwartz*, 507 F.3d at 74.

59.     First, the Second Circuit rejected the Chapter 7 trustee's argument that dismissal would have resulted in substantial prejudice to the debtor's creditors when two years had already passed since commencement of the case, finding this argument "wholly without merit." *Id.* The debtor had proposed an arrangement in which she would use litigation funding to pay all of her creditors in full immediately, including payment of any interest. *Id.* Without this arrangement, her creditors would have been forced to wait until the conclusion of her personal injury lawsuit and would risk receiving nothing if that lawsuit proved unsuccessful. *Id.* Second, the Second Circuit held that the bankruptcy court improperly focused on the competency of the debtor's proposed personal injury counsel because the debtor's proposed arrangement to pay her creditors in full was not dependent on the success of her personal injury claim and therefore not relevant to the inquiry of "the most important factor in the analysis: whether the debtor is able to secure an effective fresh start," *id.* (internal quotation marks omitted).

### 1.    Dismissal is in the Best Interest of the Debtor.

60.     The best interest of the debtor "lies generally in securing an effective fresh start upon discharge and in the reduction of administrative expenses leaving [her] with resources to work out [her] debts." *Schwartz*, 507 F.3d at 72.

61.    Dismissal of Ms. Ash's case under Section 707(a) is clearly in her best interest. The Bankruptcy Code has always been imbued with a "fresh start" policy for the honest but unfortunate debtor. The "central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991) (internal quotation marks omitted). The irony here is that staying in Chapter 7 will likely impede Ms. Ash's ability to live. Put starkly, staying in Chapter 7 may rob Ms. Ash of her life, let alone the chance at a fresh start, which she so desperately deserves after enduring immeasurable physical, emotional, and psychological trauma caused by the murder of her mother, the defamation and harassment she suffered from the Jones Entities and their zealous followers, and the daily terror of living with brain cancer.

62.    There is also no question that Ms. Ash seeks dismissal in good faith. "In evaluating a motion to dismiss, courts will closely scrutinize a debtor's motivation for seeking dismissal." *In re Herrera*, 554 B.R. 262, 267 (Bankr. D.N.M. 2016). "A debtor must seek dismissal in good faith without intent to manipulate the court system." *Id.*; *see also In re Jabarin*, 395 B.R. 330, 340 (Bankr. E.D. Pa. 2008) ("Limiting voluntary dismissal to debtors who are acting in good faith simply may be an example of the general principle that courts do not reward anyone who is trying to manipulate the court system."). "When debtors file bankruptcy to obtain the benefit of the automatic stay, but later seek dismissal because the burdens of bankruptcy begin to outweigh its benefits, courts likely will deny the motions." *In re Herrera*, 554 B.R. at 267 (collecting cases); *see also In re Jabarin,* 395 B.R at 340 ("[C]ourts are keenly sensitive to any indicia of bad faith conduct by the debtor in evaluating voluntary motions to dismiss under § 707(a)."). "In contrast,

21

where it is apparent that the debtor seeks dismissal because [of] an innocent mistake of law or fact, courts are more likely to allow the dismissal." *In re Herrera*, 554 B.R. at 267 (collecting cases) (finding "cause" existed to dismiss *pro se* debtor's Chapter 7 case where debtor had diminished mental capacity that allegedly prevented him from understanding the implications of his petition but creditors would suffer little to no prejudice because debtor fully cooperated with trustee and there was no indication that he hid or transferred assets prepetition).

63.    As further explained below, Ms. Ash has taken careful steps to ensure that dismissal is in the best interest of all parties in interest in this case. She has fully cooperated with the Chapter 7 Trustee throughout her case, she has not transferred or concealed assets on a pre-petition basis, she has truthfully disclosed all of her liabilities, and she has acted with the utmost good faith throughout the entirety of her case. Ms. Ash also does not approach the relief sought herein lightly. She has pursued grants and donations to fund her medical treatment, but unfortunately, those resources have proven insufficient to sustain her care, leaving her no choice but to resort to her only remaining asset of substance: the State Court Action Claims.

64.    Moreover, as part of her dismissal, Ms. Ash proposes to pay (i) all unsecured creditors listed on her Statements and Schedules who have not filed proofs of claim and are listed as having an undisputed, noncontingent, and liquidated claim in the amount listed on such documents, plus the average federal judgment rate of interest in effect the week prior to the Petition Date for the period of the Petition Date through October 31, 2023, with the exception of the Jones Entities, (ii) all unsecured creditors who have filed proofs of claim in the amount listed in such documents, plus the average federal judgment rate of interest in effect the week prior to the Petition Date for the period of the Petition Date through October 31, 2023, with the exception of the Jones Entities, and (iii) her one remaining secured creditor listed on her Statements and Schedules, who

has not been paid to date, plus the average federal judgment interest rate in effect the week before the Petition Date for the period of the Petition Date through October 31, 2023.

65.    Finally, she is relinquishing any discharge of the Jones Entities' claims, even though they are baseless.

66.    Ms. Ash deserves her fresh start outside of bankruptcy so that she can focus on fighting for her life with dignity and without being imprisoned in the bankruptcy system.

## 2. Dismissal is in the Best Interest of Creditors.

67.    "With regard to creditors, the issue is typically one of prejudice: [C]reditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them. A prejudicial delay also creates the appearance that such an abusive practice is implicitly condoned by the Code." *Schwartz*, 507 F.3d at 72 (internal quotation marks omitted). Ms. Ash fully recognizes that "cause" for dismissal under Section 707(a) does not exist when there is unreasonable delay or prejudice to creditors. To that end, Ms. Ash has carefully fashioned a proposed dismissal that would treat all creditors fairly and equitably, even those who have not filed proofs of claim and would not ordinarily receive a distribution in this case. Under the terms of her proposal, Ms. Ash will pay **all** creditors still holding claims (except for the Jones Entities) **with interest** at the federal judgment rate applicable on the Petition Date **within 30 days** of the entry of the dismissal order.

68.    In addition, under the Debtor's proposed dismissal, Ms. Ash's creditors will receive a recovery far quicker than if her case remained pending in Chapter 7.  If this case stays in Chapter 7, the creditors will not receive any distribution until the conclusion of the Jones Entities' appeal in the State Court Action, as well as the confirmation of plans in the Jones and Free Speech Systems bankruptcy cases and the attendant litigation and appeals that may transpire. Moreover,

even if Free Speech Systems confirms a plan, the distributions would be over a three to five year period. *See* 11 U.S.C. § 1191(c)(2). By contrast, under the Debtor's proposed dismissal, creditors would be paid within thirty (30) days of the dismissal order.

69.    Cases wherein debtors have unsuccessfully moved for dismissal often involve situations in which the debtor has failed to provide a proposal to adequately pay creditors. *See, e.g., In re Livecchi*, No. 09-20897, 2014 WL 6655702, at *3 (Bankr. W.D.N.Y. Nov. 20, 2014) (denying debtor's motion to dismiss under Section 707(a) for failure to include a proposal to pay creditors outside of bankruptcy). Ms. Ash has carefully crafted a proposal to dismiss her case to avoid this exact result.

70.    The Jones Entities' proofs of claims are outliers that deserve special consideration under these circumstances. The *Memorandum in Support of Proof of Claim* filed by the Jones Entities seeks to relitigate issues that were already determined in the State Court Action and is merely a continuation of his pattern and practice of harassing Ms. Ash in a manner that is both alarming and unacceptable. *See, e.g.,* Claim No. 12-1 dated September 27, 2021, at p. 8 (describing the State Court Action as "vexatious litigation" and "an abuse of process" as well as asserting that Ms. Ash has used the State Court Action to "unjustly and unreasonably invade the business operations and finances of [the Jones Entities]."). Jones styles his Proof of Claim as a cause of action under Connecticut's anti-SLAPP statute, Conn. Gen. Stat. § 52-196a(b), making broad allegations that Ms. Ash has violated his right to free speech under the First Amendment. *See id.* at 9. It is evident that Jones intends to use his Proof of Claim as a tool to manifest further delay, chaos, and confusion in Ms. Ash's Chapter 7 case. In short, the Jones Entities' proofs of claim appear to be nothing more than a tactic to further terrorize Ms. Ash and punish her for being bold enough to fight back against Jones' aggressive harassment and defamation. Moreover, such claims

were filed before the judgment for the Debtor and the other Sandy Hook families was rendered in the State Court Action.

71.     At this point, it appears that the Jones Entities' proofs of claim are wholly without merit. The subject matter of these proofs of claim also appears to have nothing to do with Ms. Ash's personal Chapter 7 case. Notwithstanding the apparent meritless nature of these claims, there is simply not enough time to litigate these claims and close on a transaction to allow Ms. Ash to obtain potentially life-saving medical treatment.  Thus, Ms. Ash has agreed to forego a discharge as to the Jones Entities' proofs of claim.  In short, despite the meritless nature of these claims, Ms. Ash is still proposing treatment of their collective claims in a manner that is in their best interest. Under the proposed terms of Ms. Ash's dismissal, the claims of the Jones Entities are not subject to discharge, which leaves the Jones Entities with all of their rights and remedies, including the ability to continue prosecuting such claims against Ms. Ash. Despite the utter lack of merit of those claims, Ms. Ash is willing to do this so that she may be free to focus on her needs and secure funding for life-saving cancer medications.

**B.      The Equities of This Case Warrant Application of 11 U.S.C. § 105(a) to Prevent Manifest Injustice.**

72.     Section 105(a) of the Bankruptcy Code, an omnibus provision, generally supports the broad exercise of a bankruptcy court's equitable power, and provides as follows:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The Second Circuit has adopted the view that "Section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003)

(internal quotation marks omitted). "It does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *Id.* (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). "The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing."

73.     This case presents a highly compelling reason for exercise of this Court's equitable powers. The exercise of Section 105(a) directly implicates voluntary dismissal of Ms. Ash's Chapter 7 case under Section 707(a). The relief Ms. Ash seeks under Section 707(a) is also consistent with the Second Circuit's view of the Congressional policy behind this section. *See Schwartz*, 507 F.3d at 73 (concluding that legislative history indicating a debtor's ability to pay could not constitute "cause" under Section 707(a) did not apply to a debtor's voluntary dismissal of her own Chapter 7 case). Accordingly, to the extent the Court is not thoroughly convinced that dismissal is warranted under Section 707(a), Ms. Ash implores the Court to exercise its equitable powers under Section 105(a) to allow dismissal of her case. Forcing Ms. Ash to stay in Chapter 7 and leaving her with no alternative to pay for experimental cancer treatment would effectively force her untimely death (despite the availability, assuming means to pay, of lifesaving medical treatment) and would render a manifest injustice against her.

## IV.    NOTIFICATION OF THE TRUSTEE AND STATEMENT REGARDING NO COMPENSATION TO BE SOUGHT IN CASE

74.     Prior to the filing of the Motion, the Debtor, through counsel, notified the Trustee, through counsel, that she would be filing the Motion.  Counsel for the Trustee informed counsel for the Debtor that the Trustee consents to the relief sought in the Motion.

75.     Counsel for the Trustee has confirmed that neither the Trustee nor any of the professionals that have been employed as part of the Debtor's bankruptcy case will seek a commission and/or compensation in this matter and that all are rendering their services on a *pro bono* basis.  In addition, undersigned counsel for the Debtor is also rendering services to the Debtor in this matter on a *pro bono* basis.  Accordingly, there should be no administrative expenses attendant to the Debtor's bankruptcy case.

## V.    NOTICE

76.     On November 2, 2023, a copy of this Motion and all exhibits thereto, including the proposed order granting the Motion, was provided to (i) the Office of the United States Trustee for the District of Connecticut; (ii) the Chapter 7 Trustee; (iii) counsel to the Chapter 7 Trustee; (iv) counsel for all represented creditors in the Debtor's case; and (v) all creditors listed in the Debtor's Statements and Schedules and all creditors who have filed proofs of claims in the Debtor's case who are not represented by counsel. Given the nature of the relief requested in the Motion, and the fact that no useful purpose would be served by requiring or incurring the cost of such other or further notice than as provided for, the Debtor submits that no other or further notice is necessary or required. When the Court issues a notice of hearing[16] and objection deadline in connection with the Motion, the Debtor will serve all of the foregoing parties with such notice.

## VI.   CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (i) grant the order in substantially the form annexed hereto as **Exhibit B**, and (ii) enter an order for such other and further relief as is necessary, just, and proper.

---

[16] Pursuant to D. Conn. Bankr. L. R. 9014-1(b) and Appendix N of D. Conn. Bankr. L. R., the Motion is listed as an exception to the Contested Matter Procedure that shall be set for a hearing.

Dated: November 3, 2023

/s/ *Jessica M. Signor*
Shipman & Goodwin LLP
Eric Goldstein (ct27195)
One Constitution Plaza
Hartford, Connecticut 06013
(860) 251-5059
egoldstein@goodwin.com

Jessica M. Signor (ct30066)
300 Atlantic Street, 3rd Floor
Stamford, Connecticut 06901
(203) 324-8138
jsignor@goodwin.com

*Counsel for the Debtor*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2023, a copy of the foregoing *Debtor's Motion to Dismiss Chapter 7 Case Under Section 707(a) of the Bankruptcy Code* was filed electronically and served by mail on anyone unable to accept electronic filing as indicated below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by First Class mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<u>Via Email</u>

<u>Debtor</u>
Erica L. Ash
c/o Shipman & Goodwin LLP
Attn: Eric Goldstein
One Constitution Plaza
Hartford, CT 06103
egoldstein@goodwin.com
jsignor@goodwin.com

<u>U.S. Trustee's Office</u>
Office of the United States Trustee
Holley L. Claiborn
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

<u>Via First Class Mail</u>
<u>Chapter 7 Trustee's Counsel</u>
William M. Bloss
Koskoff, Koskoff & Bieder, PC
350 Fairfield Avenue
Bridgeport, CT 06604

AMG Watertown Office
Attn: President/Manager
1801 W Olympic Blvd.
Pasadena, CA 91199-0001

AT&T
Attn: President/Manager
P.O. Box 10330
Fort Wayne, IN 46851-0330

Advanced Call Ctr Technologies
Attn: President/Manager
P.O. Box 9091
Johnson City, TN 37615-9091

Alex E. Jones
c/o Crowe & Dunlevy
Attn: Christina W. Stephenson, Esq. & Vickie L. Driver, Esq.
2525 McKinnon Street, Suite 425
Dallas, TX 75201

American Express
Attn: President/Manager
P.O. Box 1270
Newark, NJ 07101-1270

American Express National Bank
c/o Becket and Lee LLP
Attn: Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 3001
Malvern, PA 19355-0701

Capital One, N.A.
c/o Becket and Lee LLP
Attn: Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 3001
Malvern, PA 19355-0701

Carmax
Attn: President/Manager
P.O. Box 440609
Kennesaw, GA 30160-9511

Christopher M. La Tronica
34 N. 7th Street, Apt. No. PH2B
Brooklyn, NY 11249

Chrysler Capital
Attn: President/Manager
P.O. Box 660335
Dallas, TX 75266-0335

Citibank
Attn: President/Manager
P.O. Box 183037
Columbus, OH 43218-3037

Citibank, N.A.
Attn: President/Manager
701 East 60th Street North
Sioux Falls, SD 57117

Comenity
Attn: President/Manager
P.O. Box 182125
Columbus, OH 43218-2125

Credit First National Association
Attn: Bankruptcy
P.O. Box 81315
Cleveland, OH 44181-0315

Credit One Bank
Attn: Bankruptcy
P.O. Box 98873
Las Vegas, NV 89193

Discover Bank
Discover Products Inc.
Attn: President/Manager
P.O. Box 3025
New Albany, OH 43054

Fingerhut
Attn: Bankruptcy
P.O. Box 1250
Saint Cloud, MN 56395

Free Speech Systems, LLC
Attn. Officer, Managing or General Agent or Agent for Service of Process
3005 South Lamar Boulevard, Suite D109-317
Austin, TX 78704

Genesis Communications Network
Midas Resources Inc.
Attn: Officer, Managing or General Agent or Agent for Service of Process
190 Cobblestone Lane
Burnsville, MN 55337-4578

Genesis Communications Network
Attn: President
c/o Brignole & Bush LLC
73 Wadsworth Street
Hartford, CT 06106-1732

Infowars, LLC, k/n/a InfoW, LLC
Attn. Officer, Managing or General Agent or Agent for Service of Process
3005 South Lamar Boulevard, Suite D109-317
Austin, TX 78704

Infowars Health, LLC, k/n/a IWHealth, LLC
Attn. Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 19549
Austin, TX 78760

Prison Planet TV, LLC
Attn. Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 19549
Austin, TX 78760

PYOD, LLC
Resurgent Capital Services
Attn. Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 19008
Greenville, SC 29602

PYOD, LLC
Resurgent Capital Services
Attn. Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 19008
Greenville, SC 29602

Kay Jewelers
Attn: President/Manager
P.O. Box 182125
Columbus, OH 43218-2125

Kohl's
Attn: President/Manager
P.O. Box 3043
Milwaukee, WI 53201-3043

Mark Garbatini
New Haven Correctional Center – Inmate No. 368554
245 Whalley Avenue, P.O. Box 8000
New Haven, CT 06511

Optimum n/k/a Altice USA Inc.
Attn: Officer, Managing or General Agent or Agent for Service of Process
One Court Square West
Long Island City, NY 11101

PMH Alliance Medical Group
Attn: President/CEO
1801 W. Olympic Boulevard
Pasadena, CA 91199-0001

Prime Lending
Attn: President/Manager
18111 Preston Road
Dallas, TX 75252-5470

Quantum3 Group LLC as agent for Bluestem and SCUSA
Attn. Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 788
Kirkland, WA 98083-0788

Quantum3 Group LLC as agent for Comenity Bank
Attn. Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 788
Kirkland, WA 98083-0788

Radiologic Associates PC
Attn: President/Manager
P.O. Box 277
Bristol, CT 06011-0277

Radius Global Solutions LLC
Attn: President/Manager
500 North Franklin Turnpike, Suite 200
Ramsey, NJ 07446-1160

Regnier, Taylor, Curran & Eddy
c/o Ralph G. Eddy
65 Paper Chase Trail
Avon, CT 06001

Santander Consumer
Attn: President/Manager
P.O. Box 660663
Dallas, TX 75266

Synchrony Bank
c/o PRA Receivables Management, LLC
Attn: Officer, Managing or General Agent or Agent for Service of Process
PO Box 41021
Norfolk, VA 23541

TD Bank, N.A.
Payment Processing
Attn: Officer, Managing or General Agent or Agent for Service of Process
P.O. Box 16029
Lewiston, ME 04243-9507

Walmart
Attn: President/Manager
702 SW 8th Street
Bentonville, AR 72716-6299

Waterbury CT Teachers Federal Credit Union
c/o Melissa L. Simonik
1001 Farmington Avenue, Suite 303
Bristol, CT 06010-3990

Waterbury Ct Teachers FCU
Attn: President/CEO
773 Straits Turnpike
Middlebury, CT 06762-2852

Waterbury Hospital, Prospect Waterbury, Inc.
Attn: President/CEO
1801 W. Olympic Boulevard
Pasadena, CA 91199-2205

Waterbury Hospital
Attn: President/CEO
64 Robbins Street
Waterbury, CT 06708

Watertown Fire District
Attn: Tax Collector
24 Deforest Street
Watertown, CT 06795-2197

Dated at Stamford, Connecticut, this 3rd day of November 2023.

/s/ *Jessica M. Signor*
Jessica M. Signor